**FEDERAL DEPOSIT INSURANCE CORPORATION in its Corporate Capacity and as Receiver for First Bank of Rowlett, Appellant,**

v.

**BODIN CONCRETE COMPANY and Northeast Wholesale Lumber, Inc., Appellees.**

No. 05–91–01871–CV.

Court of Appeals of Texas, Dallas.

Aug. 19, 1993.

Rehearing Denied Oct. 18, 1993.

Howard F. Carter, Jr., Graham, Bright & Smith, P.C., Dallas, Jeannette E. Roach, F.D.I.C., Washington, DC, Robert L. Russell, Peter H. Fulton, Arlington, for appellant.

Mark H. How, Marcia F. Pennell, Robert M. Greenberg, Dallas, for appellees.

Before CHAPMAN, ROSENBERG and MORRIS[1], JJ.

1. Justice Joseph B. Morris succeeds Justice Kevin B. Wiggins, a member of the original panel. Justice Morris has reviewed the briefs and record in this case.

## OPINION

MORRIS, Justice.

This case involves competing claims to foreclose different liens filed against real property located in Rockwall County, Texas. The central issue to be decided is whether the Federal Deposit Insurance Corporation (FDIC), as purchaser of a failed bank's assets, has a right to foreclose a deed of trust lien granted to the failed bank. Holding it does, we leave to the trial court the task of determining the superiority between the FDIC's lien and the constitutional mechanic's liens held respectively by Bodin Concrete Company (Bodin) and Northeast Wholesale Lumber, Inc. (Northeast). These issues, along with many others, cause us to affirm in part, reverse and render in part, and reverse and remand in part. The "parts" make up the whole of the case as follows.

## PROCEDURAL AND FACTUAL BACKGROUND

In December 1985 Randy Ross approached the First Bank of Rowlett (the Bank) to obtain a letter of credit so he could procure a bond for work his company, R.S. Ross Concrete, Inc., planned to do in Plano, Texas. To secure the letter of credit Ross executed a promissory note and a deed of trust on December 30, 1985. The note was in the amount of $200,000 and was due and payable to the Bank on or before March 27, 1986. The deed of trust encumbered a tract of land owned by Ross and located in Rockwall County, Texas (the Rockwall property). The deed of trust contained a "dragnet clause" that stated the deed of trust secured, in addition to the $200,000 note, the payment of all other "debts, notes, obligations and liabilities ... which may hereafter ... be owing" by Ross to the Bank. The deed of trust also recited the December 30 note was given in return for $200,000 advanced and paid in cash by the Bank to Ross. The Bank filed the deed of trust in the Rockwall County deed records on January 2, 1986. The Bank subsequently issued the letter of credit to Ross.

On June 13, 1986, the Bank filed suit against Ross and R.S. Ross Concrete, Inc. to collect on several notes Ross signed prior to the December 30 note and deed of trust. The Bank did not sue on the December 30 note. The parties entered into a "Compromise Settlement Agreement" on September 24, 1986, to resolve the lawsuit. The settlement agreement stipulated the amount owed to the Bank and the terms of payment. The agreement contained a release provision that released the parties mutually from "any cause of action, known or unknown, whether arising in contract, tort or otherwise." It also contained a merger provision that stated the agreement superseded all prior written or oral agreements concerning the subject matter of the settlement agreement. The settlement agreement made no mention of the December 30 note or deed of trust.[2]

Between September and November 1986, Ross purchased concrete from Bodin and lumber and other material from Northeast for use on the Rockwall property. Due to financial difficulties, Ross was unable to pay Bodin and Northeast for the materials. In December 1986, Bodin and Northeast filed in the Rockwall County deed records separate statutory Mechanic's Lien Affidavits on the Rockwall property.

The letter of credit issued by the Bank to Ross expired on or about December 30, 1986. Apparently, Ross returned the letter of credit to the Bank shortly thereafter. Although he requested the Bank to release the deed of trust upon returning the letter of credit, the Bank refused. Ross subsequently defaulted on payments under the settlement agreement.

On February 18, 1987, Ross filed for bankruptcy. The Bank filed in the bankruptcy court a motion to lift the automatic stay and sought to foreclose the December 30 deed of trust lien on the Rockwall property because of Ross's default on payments under the

---

**2.** In the agreement, Ross also granted the Bank a security interest in various types of heavy equipment and a security interest and deed of trust in a tract of land located in the City of Rowlett. Additionally, the parties entered into an agreed judgment that the Bank agreed not to abstract or enforce in any manner as long as Ross and R.S. Ross Concrete, Inc. timely made payments under the settlement agreement.

settlement agreement. The bankruptcy court granted the requested relief.[3] The Bank foreclosed on the Rockwall property by substitute trustee's sale on August 4, 1987. The Bank purchased the property at the foreclosure sale and applied the sale proceeds as a credit against the amount due under the settlement agreement.

On August 14, 1987, Bodin and Northeast brought this declaratory judgment action against the Bank. They sought a judicial declaration that (1) the Bank's foreclosure sale on the Rockwall property was void; (2) the Bank's deed of trust did not secure the payment obligations under the settlement agreement; (3) the settlement agreement was an accord and satisfaction of any claims the Bank had under the deed of trust; (4) the agreed judgment obtained by Ross, R.S. Ross Concrete, Inc., and the Bank was *res judicata* with respect to any claims the Bank had under the deed of trust; and (5) Bodin's and Northeast's mechanic's liens were superior to the Bank's deed of trust lien. In addition, Bodin and Northeast sought (1) foreclosure under their mechanic's liens and an order setting aside the Bank's foreclosure, (2) damages for wrongful foreclosure in the event the Bank's foreclosure was not set aside, and (3) attorney's fees under section 53.176 of the Texas Property Code and section 37.009 of the Texas Civil Practice and Remedies Code. Both sides eventually moved for summary judgment. The trial court granted the Bank's motion for summary judgment and denied Bodin and Northeast's motion for summary judgment.

Bodin and Northeast appealed to this Court. Subsequent to submission of the case on appeal, the FDIC informed this Court the Bank was insolvent and the FDIC was acting as Receiver for the Bank. On the Court's own motion, we substituted FDIC–Receiver as appellee. In an unpublished opinion is-

sued June 25, 1990, we held Bodin and Northeast did not possess valid statutory mechanic's liens because they failed to send timely notice of their lien affidavits to Ross. But we concluded Bodin and Northeast held valid constitutional mechanic's liens and a fact issue existed regarding the validity of the Bank's foreclosure. Consequently, we reversed the trial court's summary judgment and remanded the cause to the trial court for further proceedings.

On remand FDIC–Receiver filed a third amended answer and counterclaim seeking attorney's fees and costs and alleging, among other things, Bodin's and Northeast's claims were barred by the *D'Oench* doctrine [4] and 12 U.S.C. section 1823(e).[5] The FDIC also intervened in its corporate capacity, seeking a declaratory judgment.[6] FDIC–Corporate sought a judicial declaration that (1) it was the owner and holder of the December 30 note and deed of trust, (2) it held a valid deed of trust lien on the Rockwall property, and (3) this deed of trust lien was superior to Bodin's and Northeast's constitutional mechanic's liens. FDIC–Corporate also sought attorney's fees and costs and raised the *D'Oench* doctrine and section 1823(e) as defenses to Bodin's and Northeast's claims.

The case eventually proceeded to trial. Ross testified at trial he never paid the December 30 note because no funds were advanced to him under the note. He stated the note was not really a debt because it was never funded. He claimed the Bank had an agreement with him that the note would become a debt only to the extent it was funded by money paid out under the letter of credit. Ross testified no money was ever paid out under the letter of credit.

The trial court found in favor of Bodin and Northeast. The court made findings of fact and conclusions of law. In its revised final

---

3. Ross subsequently filed a Motion to Set Aside Order Terminating Stay and to Reinstate Automatic Stay, which the bankruptcy court denied. The bankruptcy court eventually ordered the automatic stay lifted. Thereafter, Bodin and Northeast simultaneously mailed notice of their mechanic's liens to Ross and filed a Complaint to Reimpose Stay and Determine Priority. The bankruptcy court denied their motion.

4. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

5. 12 U.S.C.A. § 1823(e) (West 1989).

6. On March 23, 1989, FDIC–Receiver conveyed the December 30 note and the deed of trust to FDIC–Corporate by way of a purchase and assumption transaction.

judgment the trial court held the Bank's August 4, 1987 foreclosure sale and the December 30 deed of trust were null and void. The court also determined Bodin and Northeast held superior constitutional mechanic's liens on the Rockwall property. The trial court ordered judicial foreclosure of Bodin's and Northeast's liens and awarded Bodin and Northeast attorney's fees, prejudgment and postjudgment interest, and costs. The FDIC appealed, complaining the trial court erred in its judgment. Bodin and Northeast claim the FDIC did not timely perfect its appeal and seek dismissal of the appeal.

## DISCUSSION

In Bodin and Northeast's sole cross-point of error, they contend FDIC–Corporate failed to perfect its appeal to this Court in a timely manner. The trial court signed a final judgment on August 20, 1991. FDIC–Receiver filed a motion for new trial on September 19. It filed a notice in lieu of cost bond on November 15. On November 27, the trial court signed a revised final judgment. FDIC–Receiver filed a second motion for new trial on December 27. On February 21, 1992, the FDIC in both its Corporate and Receiver capacities filed a second notice in lieu of cost bond.

▪▪▪ Rule 329b(h) of the Texas Rules of Civil Procedure provides if a judgment is modified, corrected, or reformed in any respect, the time for appeal shall run from the time the modified, corrected, or reformed judgment is signed. *See* Tex.R.Civ.P. 329b(h); *Check v. Mitchell*, 758 S.W.2d 755, 756 (Tex.1988). Thus, the appellate timetable commenced on November 27, 1991, the date the trial court signed the revised final judgment. *See Check*, 758 S.W.2d at 756. Since FDIC–Receiver timely filed a second motion for new trial with the trial court on December 27, FDIC–Corporate had ninety days from the date of the revised final judgment within which to perfect an appeal. *See* Tex.R.App.P. 40(a)(2), 41(a)(1). It filed a notice in lieu of cost bond on February 21, 1992, within the prescribed time period. We hold

---

7. The term "FDIC" refers to the FDIC in both its Receiver and Corporate capacities unless other-

FDIC–Corporate timely perfected its appeal to this Court.

Before addressing the FDIC's[7] nineteen points of error, a brief summary of its arguments is helpful. First, it argues the dragnet clause in the December 30 deed of trust "pulled in" and secured payment of the debt owed by Ross under the settlement agreement. Thus, it asserts the Bank had a right to foreclose the deed of trust lien on the Rockwall property when Ross defaulted on payments under the settlement agreement. For this reason the FDIC contends the Bank's August 4, 1987 foreclosure sale is not void as declared by the trial court. Second, the FDIC alternatively contends it has a right to foreclose on the Rockwall property as the holder of the December 30 note and deed of trust. It claims the alleged agreement between the Bank and Ross, whereby the note was only to become funded to the extent of draws under the letter of credit, is unenforceable under the *D'Oench* doctrine and 12 U.S.C. section 1823(e). The FDIC argues the note is a facially unqualified obligation of Ross and his default in payment on the note allows it to foreclose the deed of trust lien on the property. We first will address those points of error relating to the Bank's foreclosure on the property because of Ross's default under the settlement agreement. We then will address the points of error regarding the FDIC's right to foreclose on the property.

The FDIC contends the trial court erred in holding (1) the August 4, 1987 foreclosure sale void, (2) the dragnet clause in the deed of trust applied only to "new funds" advanced after the date the deed of trust was executed, and (3) the deed of trust was void because it never secured the debts consolidated under the settlement agreement. The dragnet clause in the December 30 deed of trust reads as follows:

> It is expressly understood and agreed that this Deed of Trust shall secure, in addition to the above described Note, all other debts, notes, obligations and liabilities of every kind and character *which may here-*

---

wise indicated.

*after at the sole discretion of said Bank, be owing* by Grantor to the said First Bank of Rowlett, whether such indebtedness is evidenced by Note, account, endorsement, surety or Guaranty Agreement or otherwise.

(Emphasis added.) The FDIC maintains this dragnet clause secured the debt owed to the Bank under the settlement agreement because the debt was "hereafter owing . . . to the Bank." We disagree.

In *Estes v. Republic National Bank,* 462 S.W.2d 273 (Tex.1970), the supreme court interpreted a dragnet clause very similar to the clause in this case. In that case, Estes signed a promissory note for $30,000 payable to Republic National Bank and executed a deed of trust on a tract of land to secure payment of the note. Both before and after this transaction, Estes signed other promissory notes in favor of the bank. The bank subsequently sued Estes to recover the balance due on all the notes and to foreclose the deed of trust lien. The relevant portion of the dragnet clause in the Estes deed of trust provided the deed of trust would secure, in addition to the $30,000 note, "all other indebtedness, of whatever kind or character, *owing* or *which may hereafter become owing* " by Estes to the bank. *See id.* at 274 (emphasis added). Without elaboration, the court held the dragnet clause clearly and unambiguously stated the parties' intention that the deed of trust would secure the $30,-000 note and all other indebtedness Estes owed to the bank. *See id.* at 276.

We find *Estes* instructive in construing the dragnet clause in this case. In the *Estes* deed of trust the dragnet clause distinguished between debt that was "owing" and debt "which may hereafter become owing." The court apparently interpreted "all other indebtedness . . . owing" to refer to Estes's pre-existing indebtedness to the bank; that is, indebtedness that arose *before* and was owed at the time the deed of trust was executed. In contrast, the court seemed to interpret "all other indebtedness . . . which may hereafter become owing" to refer to any future indebtedness Estes might owe to the bank *after* the deed of trust was executed. Because the dragnet clause contemplated both pre-existing and future indebtedness, the supreme court concluded the deed of trust secured all indebtedness Estes owed to the bank regardless of whether it was owed before or after the deed of trust was executed.

■ In this case the dragnet clause in the deed of trust makes no distinction between debt that is "owing" and debt "which may hereafter become owing." The clause refers only to indebtedness "which may hereafter . . . be owing" to the Bank. Based upon the foregoing analysis, we construe this language to refer only to future indebtedness Ross might owe to the Bank; that is, indebtedness arising *after* the deed of trust was executed on December 30, 1985. The indebtedness described in the settlement agreement arose prior to December 30, 1985. It existed by virtue of several promissory notes signed by Ross before the deed of trust was executed. The settlement agreement merely restructured this pre-existing debt into a stipulated amount payable in monthly installments to the Bank. In the absence of any language referring to debt that is "owing," we hold the deed of trust did not secure the pre-existing indebtedness described in the settlement agreement.

Because the December 30 deed of trust did not secure payment of the indebtedness covered by the settlement agreement, the Bank had no right to foreclose on the property based upon Ross's default under the settlement agreement. *See Calvert v. Hull,* 475 S.W.2d 907, 911 (Tex.1972) (debt is necessary to support a lien); *Shipley v. Biscamp,* 580 S.W.2d 52, 54 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ) (in absence of debt there can be no lien). Accordingly, we hold the Bank's August 4, 1987 foreclosure sale was void.

We now turn to the question of whether the FDIC has a right to foreclose on the property as successor to the Bank's rights under the December 30 note and deed of trust. The FDIC contends the trial court erred in holding that the release and merger provisions in the settlement agreement released the Bank's right to foreclose under the deed of trust. The FDIC further contends the trial court erred in holding (1) any

mistake in failing to exclude the deed of trust from the operation of the release and merger provisions was a unilateral mistake by the Bank and (2) the release and merger provisions were clear and unambiguous.

We address the release provision in the settlement agreement first. The release provision reads as follows:

> 14. <u>Release.</u> Except as otherwise specifically provided herein, the parties hereby release, acquit and discharge each other, together with their respective officers, directors, employees and attorneys of and from <u>any cause of action,</u> known or unknown, whether arising in contract, tort or otherwise.

(Emphasis added.) The FDIC argues this provision did not release the Bank's foreclosure right under the deed of trust because the deed of trust granted the Bank the right to conduct a nonjudicial foreclosure, which it contends is a claim against property and not a "cause of action." In response, Bodin and Northeast argue that because the note was unpaid on its maturity date of March 27, 1986, the Bank held a "cause of action" to foreclose the deed of trust lien as of that date. They assert the release provision released the Bank's foreclosure right under the deed of trust. Consequently, Bodin and Northeast argue the FDIC, as successor to the Bank's rights under the deed of trust, has no right to foreclose on the Rockwall property.

■ Under Texas law, a "cause of action" consists of those facts entitling one to institute and maintain an action at law or in equity. *See A.H. Belo Corp. v. Blanton,* 133 Tex. 391, 129 S.W.2d 619, 621 (1939); *Duncan Coffee Co. v. Clement,* 246 S.W.2d 509, 511 (Tex.Civ.App.—Fort Worth 1952, no writ). Thus, a cause of action encompasses every essential fact that a plaintiff must prove to obtain a judgment. *See Krchnak v. Fulton,* 759 S.W.2d 524, 526 (Tex.App.— Amarillo 1988, writ denied). The release provision in question must be read and applied in this context to determine its effect on the Bank's foreclosure right under the deed of trust.

■ The December 30 deed of trust provides for nonjudicial foreclosure by power of sale in the event of Ross's default on the note. To exercise this right of foreclosure, the beneficiary of the deed of trust need only direct the trustee to exercise the power of sale conferred by the terms of the deed of trust. The trustee's authority to exercise the power of sale is not contingent upon the beneficiary first proving a set of facts and obtaining a judgment from a court. Rather, the trustee derives its authority to sell the debtor's property solely from the terms of the deed of trust creating the power of sale. *See Slaughter v. Qualls,* 139 Tex. 340, 162 S.W.2d 671, 675 (1942); *Consolidated Capital Special Trust v. Summers,* 737 S.W.2d 327, 331 (Tex.App.—Houston [14th Dist.] 1987), *rev'd on other grounds,* 783 S.W.2d 580 (Tex. 1989). We conclude the Bank's right to a nonjudicial foreclosure by power of sale, a right exercisable without resort to the judicial process, is not itself a "cause of action" under Texas law. Consequently, we hold the release provision in the settlement agreement did not release the Bank's foreclosure right under the December 30 deed of trust.

■ We come to a similar conclusion in considering the merger provision in the settlement agreement. The merger provision states:

> 20. <u>Entire Agreement.</u> This instrument and the documents incorporated herein by reference contain the entire agreement of the parties and supercedes [sic] all prior written or oral agreements <u>respecting the subject matter hereof.</u>

(Emphasis added.) Bodin and Northeast argue this provision effected a discharge of any foreclosure right the Bank had under the December 30 deed of trust because the deed of trust constituted a prior agreement respecting the subject matter of the settlement agreement. We disagree.

The subject matter of the settlement agreement was the pre-existing indebtedness owed the Bank under several promissory notes signed by Ross prior to the execution of the deed of trust. Because we have already determined the deed of trust did not secure payment of this pre-existing indebtedness, the deed of trust did not relate to the

subject matter of the settlement agreement. Accordingly, we hold the merger provision in the settlement agreement did not extinguish the Bank's foreclosure right under the December 30 deed of trust. In light of our holdings, we need not address the FDIC's other arguments regarding the release and merger provisions.

The FDIC next contends the trial court erred in holding (1) the FDIC failed to establish a defense under the *D'Oench* doctrine and 12 U.S.C. section 1823(e), (2) the *D'Oench* doctrine and section 1823(e) do not limit Bodin's and Northeast's claims, (3) the FDIC waived its right to raise these federal defenses, (4) no debt is owed under the December 30 note and no default ever existed under the note, and (5) the deed of trust was void because it never secured any debt.

■ We first address whether the trial court erred in holding the FDIC waived its right to raise the *D'Oench* doctrine and section 1823(e) because it failed to raise these defenses in the initial appeal to this Court. Clearly, the FDIC did not have an opportunity to raise its federal defenses in the original trial of this case because it was not substituted as a party in this action until after submission of the case on the initial appeal. Thus, the FDIC had to raise its federal defenses for the first time either at the appellate court level during the initial appeal or at the trial court level upon remand. The FDIC may not raise the *D'Oench* doctrine and section 1823(e) as defenses for the first time on appeal. *See Larsen v. FDIC/Manager Fund,* 835 S.W.2d 66, 74 (Tex.1992). Consequently, the FDIC's first opportunity to raise its federal defenses did not arise until the case was remanded to the trial court and the issue of the validity of the Bank's foreclosure was tried on the merits. Accordingly, we hold the FDIC did not waive its right to raise the *D'Oench* doctrine and section 1823(e) by failing to raise these defenses in the initial appeal to this Court.

We next address the applicability of the *D'Oench* doctrine and section 1823(e) and the effect of these federal defenses on the validity of the December 30 deed of trust lien. The FDIC contends the alleged agreement between Ross and the Bank, whereby the parties agreed the December 30 note would only be funded to the extent the letter of credit was drawn upon, is unenforceable against the FDIC because it fails to meet the requirements of the *D'Oench* doctrine and section 1823(e).

■ The common-law *D'Oench* doctrine [8] was codified at 12 U.S.C. section 1823(e) [9] to afford FDIC–Corporate the same comprehensive protection afforded FDIC–Receiver under the *D'Oench* doctrine. *See Bell & Murphy and Assocs., Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 753 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). Consequently, FDIC–Corporate may rely upon the statutory protection of section 1823(e) and FDIC–Receiver may rely upon the federal common-law protection of the *D'Oench* doctrine and its progeny. *See Twin Constr., Inc. v. Boca Raton, Inc.,* 925 F.2d 378, 382 (11th Cir.1991). Because FDIC–Corporate is the owner of the December 30 note and deed of trust, we need only address whether the alleged agreement fails under section 1823(e). But we would reach the same result under either federal defense as the aims of the *D'Oench* doctrine and section 1823(e) are identical and the two defenses are construed in tandem. *See id.*

Section 1823(e) provides:

**(e) Agreements against interests of Corporation**

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

(1) is in writing,

---

8. In *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Court applied federal common law to protect the FDIC from a secret agreement between a failed bank's management and its debtor to the effect that a promissory note made by the debtor would not be binding on the debtor.

9. 12 U.S.C.A. § 1823(e) (West 1989).

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C.A. § 1823(e) (West 1989). Section 1823(e) has been characterized as a "stout barrier" that defeats any agreement asserted against the FDIC unless the agreement meets all four requirements enumerated in the statute. *See RTC v. McCrory*, 951 F.2d 68, 71 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 459, 121 L.Ed.2d 368 (1992); *Beighley v. FDIC*, 868 F.2d 776, 782 (5th Cir.1989). The requirements of section 1823(e) are certain and categorical. An agreement comporting with section 1823(e) prevails against the FDIC while an agreement not doing so fails. *See Langley v. FDIC*, 484 U.S. 86, 95, 108 S.Ct. 396, 403, 98 L.Ed.2d 340 (1987). In *Langley*, the Supreme Court explained one of the objectives behind section 1823(e):

> One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities, ... and when the FDIC is deciding whether to liquidate a failed bank ... or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank.... The last kind of evaluation, in particular, must be made "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

*Id.,* 484 U.S. at 91–92, 108 S.Ct. at 401–02 (citation omitted). We are guided by this explanation.

In this case, the only evidence about the alleged agreement came from Ross's testimony at trial. He stated the Bank had an agreement with him that the note would become a debt only to the extent it was funded by money paid out under the letter of credit. Ross also testified he never paid the December 30 note because no funds were advanced to him.

It is conceivable such an agreement might have been entered into between Ross and the Bank as a convenience for both parties. However, no document purporting to reflect the alleged agreement was introduced into evidence at trial. As such, the alleged agreement does not meet the requirements of section 1823(e) and is unenforceable against the FDIC. *See Beighley*, 868 F.2d at 783. In the absence of any document in the Bank's records reflecting the alleged agreement between Ross and the Bank, the FDIC in assessing the Bank's assets was entitled to rely upon the facially unqualified language of the December 30 note and deed of trust. We hold FDIC–Corporate established a valid defense under 12 U.S.C. section 1823(e), and the trial court erred in failing to apply this defense to the facts of the case.

Furthermore, the fact no money was ever advanced under the note does not vitiate the FDIC's defense under section 1823(e). If no money were advanced to Ross, it was in furtherance of the undisclosed agreement Ross made with the Bank. In reviewing the Bank's written records, however, the FDIC would have been unaware that no money had been advanced to Ross. The FDIC had before it only the unqualified language of the December 30 note and deed of trust. The note recited Ross promised to pay $200,000 to the Bank on or before March 27, 1986. The deed of trust recited the note it secured was given for the sum of $200,000 advanced and paid in cash by the Bank to Ross. Ross's testimony that no funds were advanced to him under the note directly contradicted the unqualified language found on the face of these documents. Because this testimony related to an undisclosed agreement

extraneous to the documents contained in the Bank's records, it was not material to any issue that would otherwise defeat the FDIC's rights under the December 30 note and deed of trust. *See Baumann v. Savers Fed. Sav. & Loan Ass'n,* 934 F.2d 1506, 1516 (11th Cir.1991), *cert. denied,* ―― U.S. ――, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992); *FSLIC v. T.F. Stone–Liberty Land Assocs.,* 787 S.W.2d 475, 491–92 (Tex.App.—Dallas 1990, writ dism'd). We conclude, therefore, the trial court erred in finding no debt was owed under the December 30 note, no default existed under the note, and that the deed of trust was void because it never secured any debt. This harsh result is unavoidable under federal law. *See Langley,* 484 U.S. at 91–92, 108 S.Ct. at 401–02. We hold FDIC–Corporate possesses a valid deed of trust lien on the Rockwall property by virtue of the December 30 deed of trust.

 Bodin and Northeast contend section 1823(e) does not apply in this case because the statute precludes only "borrowers" from asserting undisclosed agreements against the FDIC. They point out that they are not "borrowers" but rather are constitutional mechanic's lienholders who are not involved in a lending relationship with the Bank. Consequently, they assert section 1823(e) does not prevent them from asserting the alleged agreement against the FDIC. Section 1823(e) has been applied, however, to prevent a party to an unrecorded agreement from asserting the agreement against the FDIC even though the party did not have a lending relationship with a failed bank and, therefore, was not a borrower. *See North Ark. Medical Ctr. v. Barrett,* 962 F.2d 780, 782 (8th Cir.1992) (depositor of failed bank); *Twin Constr., Inc. v. Boca Raton, Inc.,* 925 F.2d 378, 379 (11th Cir.1991) (competing lienholder of failed bank); *First State Bank v. City & County Bank,* 872 F.2d 707, 708 (6th Cir.1989) (purchaser of loan and loan participation from failed bank). We apply section 1823(e) similarly to prevent Bodin and Northeast from asserting the alleged agreement against the FDIC even though they are not borrowers of the failed Bank.

Moreover, the fact that Bodin and Northeast are not parties to the alleged agreement between Ross and the Bank does not limit the applicability of section 1823(e) in this case. We recognize most situations where section 1823(e) has been applied involved a *party* to the agreement asserting the agreement against the FDIC. We conclude, however, this party-nonparty dichotomy is a distinction without a difference because the federal policy underlying section 1823(e) would be violated if either a party or a nonparty to an undocumented agreement were permitted to assert the agreement against the FDIC.

When FDIC–Corporate purchases assets of a failed bank from FDIC–Receiver, it gives value for the asset. *See North Ark.,* 962 F.2d at 789. FDIC–Corporate then tries to recover on the asset to offset the money it has paid. *See id.* If an undisclosed agreement were asserted successfully against FDIC–Corporate, thereby defeating its right to recover on an asset, it ends up with an asset of lesser value than it originally appeared to have. *See id.* Bodin and Northeast here are attempting to defeat FDIC–Corporate's interest in the December 30 note and deed of trust, and ultimately in the Rockwall property, by asserting the note was never funded and, therefore, no lien existed against the property. If Bodin and Northeast were to succeed, FDIC–Corporate would have purchased an entirely worthless asset. The federal policy underlying section 1823(e) is aimed at preventing the very act Bodin and Northeast are trying to accomplish. As such it precludes them from asserting against the FDIC the alleged agreement between Ross and the Bank. Consequently, the trial court erred in holding section 1823(e) does not limit Bodin's and Northeast's claims.

According to the FDIC, the trial court also erred in holding Bodin's and Northeast's constitutional mechanic's liens were superior to its deed of trust lien. It is undisputed Bodin and Northeast hold valid constitutional mechanic's liens on improvements on the Rockwall property for the materials furnished to Ross. *See* TEX. CONST. art. XVI, § 37; *American Amicable Life Ins. Co. v. Jay's Air Conditioning & Heating, Inc.,* 535 S.W.2d 23, 25 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.). Furthermore, their liens

arose after January 2, 1986, the date the Bank recorded the December 30 deed of trust in the Rockwall County deed records.

A constitutional mechanic's lien is superior to a prior recorded deed of trust lien with respect to the improvements and materials for which the mechanic's lien exists if the materials supplied can be removed without material injury to the land, pre-existing improvements, or the improvements and materials themselves. *See Justice Mortgage Investors v. C.B. Thompson Constr. Co.,* 533 S.W.2d 939, 944 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). Conversely, a constitutional mechanic's lien is inferior to a prior recorded deed of trust lien with respect to the improvements and materials if the materials supplied cannot be removed without material injury. *See id.* Whether this "material injury" test is met is a question to be answered by the trier of fact. *See Exchange Sav. & Loan Ass'n v. Monocrete Pty. Ltd.,* 629 S.W.2d 34, 36 (Tex.1982). The record here does not reflect the extent of improvements or materials on the Rockwall property, and the trial court did not determine whether these improvements and materials, if any, can be removed without material injury. We must, therefore, leave it to the trial court to determine upon remand the superiority between Bodin's and Northeast's constitutional mechanic's liens and the FDIC's deed of trust lien.

The FDIC also contends the trial court erred (1) in denying the FDIC attorney's fees, costs, prejudgment interest, and postjudgment interest and (2) in holding Bodin and Northeast were entitled to attorney's fees. The FDIC argues it was entitled to attorney's fees, costs, prejudgment interest, and postjudgment interest pursuant to section 37.009 of the Texas Civil Practice and Remedies Code. The FDIC claims Bodin and Northeast were not entitled to attorney's fees under section 37.009 because the money would have to be paid out of the Bank's assets to the detriment of the Bank's creditors.

Section 37.009 provides that in any declaratory judgment proceeding brought under chapter 37 the trial court may award costs and reasonable and necessary attorney's fees as are equitable and just. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986); *Canales v. Zapatero,* 773 S.W.2d 659, 661 (Tex.App.—San Antonio 1989, writ denied). When a declaratory judgment is sought under chapter 37, either party may plead for and obtain attorney's fees. An award of attorney's fees is not limited to the plaintiff or to the party affirmatively seeking declaratory relief. *See Hartford Casualty Ins. Co. v. Budget Rent–A–Car Sys., Inc.,* 796 S.W.2d 763, 771 (Tex. App.—Dallas 1990, writ denied). The grant or denial of attorney's fees in a declaratory judgment action lies within the sound discretion of the trial court, and the trial court's judgment will not be reversed on appeal absent a clear abuse of discretion. *See A.H. Belo Corp. v. Southern Methodist Univ.,* 734 S.W.2d 720, 724 (Tex.App.—Dallas 1987, writ denied).

Although the FDIC contends the trial court erred in denying it attorney's fees, costs, prejudgment interest, and postjudgment interest, it does not direct us to any action by the trial court constituting an abuse of discretion. Even so, we have reviewed the record. We find no basis for concluding the trial court abused its discretion and so hold.

We reach a different conclusion with respect to the trial court's award of attorney's fees to Bodin and Northeast. Where recovery of attorney's fees is not provided for by contract or where there is no collateral fund from which they can be recovered, a claim for attorney's fees cannot be asserted against the assets of a failed bank. *See Interfirst Bank Abilene, N.A. v. FDIC,* 777 F.2d 1092, 1097 (5th Cir.1985); *FSLIC v. T.F. Stone–Liberty Land Assocs.,* 787 S.W.2d 475, 492 (Tex.App.—Dallas 1990, writ dism'd). In the instant case, there is neither a contract between the FDIC and Bodin or Northeast nor a collateral fund from which Bodin and Northeast's attorney's fees may be paid. Any money paid out to Bodin and Northeast would be appropriated from the failed Bank's general assets. Such a result would be contrary to the mandate of 12 U.S.C. section 194, which requires the assets

of a failed bank be ratably distributed among the bank's creditors holding approved or adjudicated claims. *See* 12 U.S.C.A. § 194 (West 1989); *Interfirst,* 777 F.2d at 1097. We hold the trial court erred in awarding attorney's fees to Bodin and Northeast.

Based upon the foregoing, we affirm that portion of the trial court's judgment (1) setting aside and declaring the Bank's August 4, 1987 foreclosure sale null and void, (2) declaring the December 30 deed of trust did not secure payment of the debt described in the settlement agreement, and (3) declaring the FDIC take nothing from Bodin and Northeast with respect to attorney's fees, costs, prejudgment interest, and post-judgment interest.

We reverse that portion of the trial court's judgment declaring (1) the December 30 deed of trust null and void insofar as the deed of trust did not secure payment of the debt owed under the December 30 note, and (2) Bodin and Northeast are entitled to attorney's fees. We render judgment for the FDIC on these issues.

We also reverse that portion of the trial court's judgment declaring Bodin and Northeast hold first and superior liens against the Rockwall property. We remand the cause to the trial court on these issues for further proceedings consistent with this opinion.