# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00476-CV

**Robert L. Haug, Appellant**

**v.**

**Steve Carter; Betty McKenna; Richard & Debby Jensen; Randy & Sherry Kanak; Tom & Elaine Marcin; Charles & Hopie Anderson; Paul Grayburn; Rose Heiken; Dwight & Victoria Reck; Thurman Bend Estates Owners Association, Inc.; Thomas S. Trotter; Robert Trotter Gift Trust for Thomas U/A/D 5-3-82; Vinson M. Wood, d/b/a Southwest Properties and Thomas Childers, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. GN302217, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This case concerns an easement over property owned by appellant Robert Haug and located on Lake Travis in Travis County. The district court reformed the easement from a "Boat Launch Easement" to a "Lake Side Park Area Easement." Haug argues that the district court had insufficient evidence on which to base its findings of fact and that it erred in making its conclusions of law, in reforming the easement, in refusing to enter a declaratory judgment in his favor, in failing to grant his affirmative defenses, and in granting attorney's fees against him. For the reasons stated below, we affirm the judgment of the district court.

## BACKGROUND

In the early 1990s, Thomas Trotter, acting through the Trotter Trust, developed Thurman Bend Estates, a twenty-seven lot residential subdivision on the south shore of Lake Travis in Travis County. The subdivision includes lakeside lots and lots without direct lake access. Trotter relied on Southwest Properties, a real estate company, to act as his sales agent in marketing subdivision lots. Trial evidence showed that both Trotter and Southwest Properties represented both orally and in written advertising materials that the subdivision lot owners would have the use of a one-acre homeowner's park on Lake Travis. These statements represented to lot purchasers that the homeowner's park on Lake Travis would allow recreational activities such as "picnicking, swimming, sunbathing, fishing, and similar recreational activities, including the launching of watercraft and associated automobile and watercraft trailer parking." The Declaration of Covenants, Conditions, and Restrictions for the subdivision provided that the developer would convey a "lake side park area easement and an access easement for the usage by all Owners" to the Thurman Bend Property Owners Association ("Owners Association"). From the inception of the development, the represented location of the one-acre park was on the portion of the subdivision that became platted as Lot 18.

Haug was a licensed real estate agent working at Southwest Properties. He shared an office with other sales agents at Southwest Properties. Although another Southwest Properties agent was primarily in charge of marketing lots for Thurman Bend Estates, Haug sold at least one lot in the subdivision. In 1996, Haug purchased Lot 18 from Trotter.[1] According to the trial court,

---

[1] Haug also purchased Lot 19, a non-lakeside lot in the subdivision.

Haug had actual knowledge that the one-acre park was located on Lot 18 and that recreational activities would be allowed at the park. The court further found that Haug knew about the representations being made about the park and that he had received at least one version of a flyer sent out that described the easement to prospective lot buyers.

In 1996, Haug and Trotter entered into a earnest money contract for the purchase of Lot 18.[2] In that agreement, a handwritten provision "reserve[d] the right to retain a 1 acre recreational easement (Dimensions 100' x 400') along the east boundary line of this lot for the benefit of the property owners association. Said easement shall have access across Lot 18 to Thurman Bluff Rd. and be recorded by separate instrument after the subdivision plat is approved and recorded." The contract also specified that the easement was intended for the benefit of the Owners Association.[3]

Before the final sale of Lot 18, and contrary to the earnest money contract, Haug requested that Trotter's attorney, Tom Davies, change the language of the proposed park easement on Lot 18 from a "lake side park easement" to "boat launch easement." Trial testimony from Davies indicated that he agreed to this change because including the term "boat launch" in the easement description would offer a more accurate description of the easement without changing Trotter's intention, to include a provision that a one-acre lakeside park easement for subdivision lot owners and guests be provided. Davies testified that the change in terminology was intended to describe the location of the easement as the area where boats are launched into Lake Travis, and further that

[2] Several of the agreements involving Thomas Trotter were actually conducted on his behalf by his attorney, Tom Davies, or by Southwest Properties.

[3] At the time of the sale of Lot 18, Trotter headed the Owners Association. Control of the Owners Association was transferred in July 1998 to lot owners.

Trotter instructed him to reject an attempt by Haug to change the language of the easement so that it prohibited recreational activities formerly advertised to lot owners.

At trial, Davies testified that two surveyors produced the Grant of Easements document. One surveyor, James Garon, performed field work and wrote notes concerning the property in 1995. The other, Roy Smith, later used those notes to draw up the Grant of Easements. Although Davies would normally have one surveyor do this work, he had scheduling and communication problems with Garon, so he turned to Smith to complete the work. According to Smith, he produced the final grant document solely based on Garon's notes and a freehand sketch faxed to him by Davies. He did not speak with Garon, Davies, or Trotter concerning the dimensions they intended for the easement. Smith did not receive a copy of the earnest money contract, which detailed the intended dimensions of the easement.

On February 26, 1996, a Grant of Easements—referring to a "Right-of-Way Easement" and to a "Boat Launch Easement"—was executed on Lot 18, and this document was supposed to implement, according to Davies, the formal creation of the homeowner's lakeside park as described by the Declaration. However, the land area comprised in the metes and bounds description for the Boat Launch Easement was of 10,934 square feet (approximately 92 feet by 110 feet), rather than the approximately 40,000 square feet described in the earnest money contract. The Grant of Easements also referred to an easement strip twenty feet in width, abutting the high water line of Lake Travis for the purpose of passage and use by the public for public sports and amusements, that was contained in the original deed that Trotter acquired with the property. The Right-of-Way easement describes a pedestrian and vehicle ingress and egress easement across Lot

4

18 to the easement along the lakeside.[4] This dispute centers on the nature of the grant of the "Boat Launch Easement" and the trial court's reformation of the easement from 10,000 square feet to 40,000 square feet as described in the earnest money contract.

In a letter dated April 2000, Haug notified his fellow lot owners that the boat launch easement on his property was "provided for the immediate loading and unloading of watercraft, but does not provide for a park or picnic area." He further wrote that the boat launch easement included a "limitations of use" section that prohibited "parking, fishing, picnicking, loitering, camping, including fires, [and] swimming." Haug indicated that unattended vehicles would be towed at the owner's expense and that "all pedestrian traffic should be limited to boat launching only."

In July 2000, Thurman Bend Estates lot owners filed suit against Haug and other defendants seeking, among other things, the reformation of the easement across Lot 18 into a "lake side park area easement" and payment of attorney's fees; the intervening Owners Association joined the case in November 2001. In response, Haug filed a counterclaim, seeking a declaration to enforce the Grant of Easements as written and attorney's fees. After a three-day bench trial in November 2002, the court found that the Grant of Easements failed to set forth the actual and full intention of the developer to provide for the grant of an easement on Lot 18 for a one-acre homeowner's park to be used for recreational activities. The court found that the developer intended to allow the Owners Association to adopt rules and regulations governing the use of the lake side park area easement on Lot 18 and to allow improvements within the easement, such as "picnic tables, barbecue pits, a boat dock and/or swimming platform."

---

[4] The ingress and egress easement is not disputed in this case.

5

The trial court also found that the Grant of Easements failed to attach a correct legal description of the area on Lot 18 subject to the lakeside park area easement. The court said that this failure arose from a lack of coordination or clear communication between the attorney who prepared the Grant of Easement and Smith, the surveyor who prepared the legal description. It concluded that the legal description of the easement on Lot 18 is a mistaken description that is not consistent with the agreement, understanding, and intent of the parties at the time Haug purchased Lot 18.

The trial court then reformed the legal description of the easement to conform to the intent of the parties by modifying the term "Boat Launch Easement" to read "Lake Side Park Area Easement." The court also said that activities such as "picnicking, swimming, sunbathing, fishing" and launching of watercraft were allowed on the easement. In addition, the court voided the Grant of Easement's prohibition on "activities of extended duration" within the former twenty-foot easement strip along Lake Travis. The court also reformed the Official Real Property Records in Travis County and the Grant of Easements to reflect the reformation of the easement into a "Lake Side Park Area Easement."

Further, the court awarded the plaintiffs and the intervening Owners Association a judgment for the recovery of their reasonable attorney's fees of $76,246.89, with seventy-five percent of the judgment totaling $57.185.17 due from Haug.[5] This appeal followed.

---

[5] Responsibility for the remaining award was assigned to the developer, Thomas Trotter, who does not appeal that judgment. He joins the lot owners and Owners Association against Haug in this appeal.

**DISCUSSION**

In six issues, Haug argues on appeal that the district court erred when it (1) based its finding of fact on insufficient evidence, (2) made erroneous conclusions of law, (3) reformed the easement across Lot 18, (4) failed to grant his affirmative defenses, (5) refused to enter a declaratory judgment in his favor, and (6) granted attorney's fees against him.[6]

*Findings of Fact and Conclusions of Law*

Because Haug generally argues that the trial court erred in making numerous findings of fact and conclusions of law that are relevant to the outcome of this case, we begin with these first two issues. Haug cites no authority for these issues and provides no argument, aside from vague references to the rest of his brief. He does not identify the basis for his objection or the error the court made in any of its findings or conclusions. On appeal, an appellant must sufficiently brief his argument to raise a challenge to a finding of fact or conclusion of law from trial. *See* Tex. R. App. P. 38.1(h); *In re Barr*, 13 S.W.3d 525, 555 (Tex. 1998). Because Haug has insufficiently briefed arguments pertaining to any specific finding or conclusion, Haug waived these issues. *Id.* Nevertheless, even though we find these issues waived as a matter of law, our examination of the issues presented in this case has required a thorough review of the record in this case. Thus, to the extent that Haug's objections arise in his other issues, we will review them appropriately in those sections of the opinion.

Furthermore, for those findings of fact that we will examine, we review a trial court's findings of fact under the same legal standards as applied to a review of jury verdicts—factual

---

[6] For the sake of convenience, we have re-ordered Haug's issues on appeal.

7

sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). In this review, we must weigh all of the evidence in the record. *Id.* Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*

In addition, we note that the district court made a specific finding of fact that the testimony of Haug, insofar as it disputed facts found by the district court, was "not credible." The district court also found that Haug's conduct in disputing the rights of subdivision lot owners was "not in good faith and substantially contributed to the necessity of this suit by plaintiffs and intervenor." Our own review of the record gives us no indication that the court's finding was clearly wrong or unjust, and Haug does not specify his objection to those findings. Thus, we are bound by the trial court's finding and will not lend credibility to Haug's testimony when it contradicts other evidence. *See id.* (citing *Farr v. Bell*, 460 S.W.2d 431, 435 (Tex. Civ. App.—Dallas 1970, writ ref'd n.r.e.) (noting that court of appeals cannot "hold that the trial court should have believed the witnesses whose testimony it saw fit not to believe")). We overrule Haug's first and second issues.

### *Reformation of the Easement*

In his third issue, Haug argues that the district court erred in reforming the "Boat Launch Easement" located in the Grant of Easements into a "Lake Side Park Easement" as described in representations to Thurman Bend Estates lot owners.

In reforming a written instrument, there must be evidence of the true intention of the parties, and the reformation must conform to that agreement and not create an agreement that never existed. *Continental Oil Co. v. Doornbos*, 402 S.W.2d 879, 883 (Tex. 1966). By implication, then, reformation requires two elements: (1) an original agreement and (2) a mutual mistake, made after

8

the original agreement, in reducing the original agreement to writing. *Id.*; *Sun Oil Co. v. Bennett*, 84 S.W.2d 447, 451 (Tex. 1935); Restatement (Second) of Contracts § 155, comment a (1979); *see also Thalman v. Martin*, 635 S.W.2d 411, 413 (Tex. 1982). Unilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake. *Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988).

Because the reformation issue demands review of the trial court's factual findings, we examine the record for findings that are against the great weight of the evidence. *Ortiz*, 917 S.W.2d at 772. We will overturn a factual finding only if it is against the great weight and preponderance of the evidence as to be clearly wrong and unjust.[7] *Id.*

In this case, the trial court concluded that the failure of the Grant of Easements to set forth the actual and full agreements and understandings of the parties and to attach a correct legal description of the access easement and the one-acre lakeside park area easement was the result of mutual mistake by all parties, including Haug, and the surveyor's error. The court held in the alternative that the failure of the Grant of Easements to set forth actual and full agreements and understandings of the parties and to attach a correct legal description of the lakeside park area easement was the result of a unilateral mistake by Thomas Trotter, the Trotter Trust, and the Owners

---

[7] Haug argues that, in order to reform a written instrument, we should apply a "clear and convincing" evidence standard as announced in *In re C.H.*, 89 S.W.3d 17 (Tex. 2000). The supreme court set this standard of review in a case involving parental termination. *See id.* It applied a heightened standard because of the due process concerns in cases involving that issue. *Id.* at 23 ("termination is a drastic remedy and is of such weight and gravity that due process requires the state to justify termination of the parent-child relationship by proof more substantial than a preponderance of the evidence"). Because that rationale does not apply to a case involving the reformation of an easement, we do not apply that standard here.

9

Association. It also held that Haug's actions constituted inequitable and fraudulent conduct by misrepresenting his contemporaneous agreement and understanding of the effect of the Grant of Easements at the time of its execution and his purchase of Lot 18, knowing that he would later assert an inconsistent legal position regarding the effect of the Grant of Easements.

In light of the trial court's finding that Haug's testimony was not credible, we note that Haug negotiated a name change for the easement across his property from "lake side park easement" to "boat launch easement." Haug later asserted a legal position that this name change meant that the easement would only be used for ingress and egress to the boat launch. Much evidence exists that this interpretation of the easement went against the longstanding intention of the developer, Trotter, his attorney, Davies, and the expectations of the Owners Association. Both the Declaration of Covenants, Conditions, and Restrictions between the developer and lot owners and the Earnest Money Contract between the developer and Haug predate the Grant of Easements between the developer and Haug, and are evidence of the intention to create a lakeside park easement. They are also evidence that Haug knew of that intent. The developer and his representative both testified that the easement was never intended solely for ingress and egress, and both indicate an agreement that a future park area easement and access easement would be created on Lot 18. We find sufficient evidence to support the trial court's finding of fraudulent conduct.

In response, Haug argues that the trial court should have followed *Wal-Mart Stores, Inc. v. Sturges* and treated his fraudulent conduct as a mere savvy business deal. *See* 52 S.W.3d 711 (Tex. 2001). In *Sturges*, the supreme court held that a real estate investor could not recover against Wal-Mart for tortious interference in a prospective business deal. *Id*. at 727. That case , however,

10

involved two competing business deals from a sophisticated corporation and a real estate investor that stood to reap economic gain from a property deal. This case does not involve economic gain or a prospective business deal; rather, it involves lot owners seeking to reform an easement that was changed without their knowledge. Thus, *Sturges* does not apply to this case.

We also find no great weight of evidence against the trial court's finding that Davies, as Trotter's agent, was mistaken when he allowed the easement name change to take place, believing that the name change would only better describe the developer's intention that the easement serve as a lakeside park area. Davies testified that it was never his intent to prohibit lots owners from "fishing, swimming, picnicking" or enjoying the other activities that plaintiffs indicated in their case. He also testified that flexibility was intended in the use of the easement, and that the Owners Association was to be given the authority to make rules and regulations pertaining to the easement. In addition, the testimony from Smith, the surveyor, and from Davies concerning the circumstances that led to the production of the Grant of Easement lends weight to the trial court's conclusion of mistake. There is no evidence that the trial court was clearly wrong and unjust in finding that Davies mistakenly changed the name of the easement in response to Haug's request. Thus, we find sufficient evidence to support the trial court's finding of unilateral mistake.

After reviewing the record, we agree that there is no great weight of evidence against the trial court's findings that would lead us to believe that any injustice has occurred. Therefore, we find that reformation of the Grant of Easement is appropriate because of a finding of unilateral mistake on the part of Trotter's attorney and the fraudulent conduct of Haug. Because there is sufficient evidence to support the district court's findings of a prior original agreement and of

11

unilateral mistake in addition to fraud, we need not review the trial court's alternate finding of mutual mistake.[8] *See Davis v. Grammar*, 750 S.W.2d 766, 768 (Tex. 1988); *Doornbos*, 402 S.W.2d at 883. We overrule Haug's third issue.

*Affirmative Defenses*

In his fourth issue, Haug argues that the district court erred in reforming the easement across his property because it should have granted his affirmative defenses of lack of standing, statute of limitations, and merger.

First, Haug argues that the appellees lack standing to bring their cause of action because they are not third-party beneficiaries of the Grant of Easements between Trotter and Haug, which was the final written instrument reducing the agreement over the easement into writing. Standing is a component of subject-matter jurisdiction, and we thus consider the appellees' standing under the same standard by which we review subject-matter jurisdiction generally. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Subject-matter jurisdiction presents a question of law; we review the district court's decision *de novo*. *See Mayhew v. Town of*

---

[8] Because we find unilateral mistake in addition to fraud, we do not need to address Haug's argument that the trial court erred in finding mutual mistake. However, we disagree with Haug's reliance on *National Resort Communities, Inc. v. Cain* to argue that the Grant of Easements should not be reformed. *See* 526 S.W.2d 510, 513 (Tex. 1975) (written instrument could not be reformed to include land never identified by parties). In this case, advertisements to prospective lot owners and the Declaration identified the existence of a one acre lakeside park. The Earnest Money Contract signed by Haug further identified that location and size—100 feet x 400 feet easement along the east boundary of Lot 18—of the lakeside park. Thus, the lot owners sought reformation of the easement to protect previously identified land. *See Shotwell v. Morrow*, 498 S.W.2d 432 (Tex. Civ. App.—Eastland 1973, writ ref'd n.r.e.) (written instrument reformed because parties were mutually mistaken about the precise description of the property in question). We find no evidence that either the individually named lot owners or the Owners Association is trying to seize land that was never identified.

12

*Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.). The general test for standing for individuals requires that there "(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought." *Board of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955).

A person who is not a party to a contract will still have a cause of action to enforce the contract if it was made for his or her benefit. *Dairyland County Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 775 (Tex. 1983); *Republic Nat'l Bank of Dallas v. National Bankers Life Ins. Co.*, 427 S.W.2d 76, 81 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.). The person claiming to be a third-party beneficiary must establish the existence of a contract and standing as a third-party beneficiary. *Paragon Sales Co. v. New Hampshire Ins. Co.*, 774 S.W.2d 659, 660 (Tex. 1989). Once some evidence has been produced to show a contract and standing as a third-party beneficiary, it is incumbent on the opposing party to prove any defenses that would limit or bar recovery by the third-party beneficiary. *Id.* at 661. The general rule is that a mistake that justifies relief must be a mutual, not a unilateral, mistake. *Cigna Ins. Co. v. Rubalcada*, 960 S.W.2d 408, 412 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Under certain conditions, however, the principles of equity may permit relief for a unilateral mistake. *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 373 (Tex. 1960).[9]

---

[9] There is no rigid test for granting equitable relief in the case of a unilateral mistake. *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 373 (Tex. 1960). But, in general, equitable relief will be granted against a unilateral mistake when the conditions of remediable mistake are present, when other circumstances govern or influence the extension of relief, such as the acts and extent of knowledge of the parties, or where there is proof of a

In this case, we look first to whether the individual lot owners had standing to bring their cause of action. We agree that a real controversy existed over the discrepancy between the advertised easement and the easement described in the Grant of Easements and that the discrepancy was actually determined by the equitable relief granted by trial court's reformation of the easement. Davies's testimony indicated that the change of name for the easement from "Boat Launch Easement" to "Lakeside Park Easement" was not meant to alter Trotter's intention to allow recreational activities. However, after the Grant of Easements, Haug claimed that activities of extended duration were prohibited. He also claimed that the land area comprised in the metes and bounds description for the Boat Launch Easement was approximately 92 feet by 110 feet, or 10,934 square feet rather than the approximately 40,000 square feet described in the earnest money contract. This real controversy led to the cause of action before us. Given the circumstances in this case that a unilateral mistake occurred as a result of fraudulent conduct when the agreement over the easement was reduced to a writing in the Grant of Easements, we find sufficient evidence to support a conclusion that the individual lot owners have standing to bring their cause of action against Haug.

We now turn to the standing of the Owners Association. An association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Texas Ass'n of Bus.*, 852 S.W.2d at 447.

---

combination of circumstances establishing remediable mistake and timely communication of knowledge to and assertion of the right to relief against the other party. *Id*.

14

We have already determined that the individual lot owners otherwise have standing to bring their cause of action against Haug. Next, the trial court found that the Owners Association had a real interest in reforming the easement for the benefit of all lot owners in the subdivision and the Owners Association is a third party beneficiary of the Earnest Money Contract and in the Declaration of Covenants, Conditions, and Restrictions. Testimony by Trotter, Davies, and a handwritten provision of the Earnest Money Contract signed by Haug indicate that the easement across his property was for the benefit of the Owners Association. Thus, there is sufficient evidence that the interest of the Owners Association in reforming the easement was germane to the organization's purpose. Finally, this suit does not require the individual participation of any individual lot owner because the association itself was named as a beneficiary in the earnest money contract. Therefore, the Owners Association has standing to bring its cause of action against Haug.

Next, Haug argues statute of limitations bars this case. In an action for which there is no express limitations period, a suit must be brought not later than four years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 1997). However, courts have recognized a blanket exception in suits for reformation based on mutual mistake in deeds, as long as no rights of *bona fide* innocent purchasers have intervened. *Broyles v. Lawrence*, 632 S.W.2d 184, 188 (Tex. App.—Austin 1982, no writ) (holding purchase price in deed could be reformed after statute of limitations period had run because amount of land stated in deed was incorrect). Alternatively, when a mutual mistake is made as to the legal effect of a written instrument, the statute of limitations begins to run either when the mistake is discovered or when, in the exercise of reasonable diligence, the mistake should have been discovered. *Brown v. Havard*,

15

593 S.W.2d 939, 944 (Tex. 1980). The question of when a mistake should have been discovered is a fact question. *Id.*

In this case, the district court determined that Haug made, at best, passing reference at an Owners Association meeting that the easement located on his property was to be used for ingress and egress only. The district court concluded that the plaintiffs and intervenor were not charged with knowledge of the Grant of Easements as a result of it being filed with the Travis County Clerk. The court based this conclusion on a letter that was sent from Haug to the lot owners on April 5, 2000, informing lot owners that the easement across his property was for ingress and egress only. We find nothing unjust with the court's findings on this issue. *See Oritz*, 917 S.W.2d at 772. Because the appellees filed suit in 2000 within four years after learning about the changes to the Grant of Easements, the statute of limitations has not run.

Finally, Haug argues that previous agreements describing a lakeside park area—such as the Earnest Money Contract and the Declaration—are not enforceable because this term merged into the Grant of Easements as the final written agreement between the parties. It is a rule of general application that in the absence of fraud, accident, or mistake, all prior agreements entered into between the parties are considered merged in the deed. *Commercial Bank, Unincorporated, of Mason v. Satterwhite*, 413 S.W.2d 905, 909 (Tex. 1967). However, the underlying objective of reformation is to correct a mutual mistake made in preparing a written instrument, so that the instrument truly reflects the original agreement of the parties. *Cherokee Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex. 1987).

16

We reject Haug's argument that the merger doctrine should limit our analysis to the language of the Grant of Easements. We have determined that unilateral mistake and fraud occurred in this case. These elements are the legal equivalent of mutual mistake in the case of an easement. *Davis*, 750 S.W.2d at 768. Therefore, there is evidence both of fraud and mistake in this case, and the merger doctrine does not apply. *See Commercial Bank,* 413 S.W.2d at 909.

We have considered and rejected Haug's arguments concerning standing, statute of limitations, and merger. We overrule his fourth issue.

### *Declaratory Judgment*

In his fifth issue, Haug argues that the trial court erred in refusing to enter a declaratory judgment in his favor on the meaning of the Grant of Easements. A trial court has the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.003 (West 1997). Because we have already concluded that the easement across Haug's property was properly reformed by the trial court, we uphold the court's denial of Haug's request that it declare the meaning of the Grant of Easements as written. We overrule Haug's fifth issue.

### *Attorney's Fees*

In his sixth issue, Haug argues that the district court improperly granted attorney's fees against him because attorney's fees are not available in a reformation suit and in a suit brought under the Uniform Declaratory Judgments Act (UDJA) when the claim is duplicative of another. Here, he argues that the UDJA claim is duplicative of the reformation suit, so the claim is only a

17

vehicle for attorney's fees. In a declaratory judgment, a trial court may award those fees that are "reasonable and necessary" for the prosecution of a case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997); *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Attorney's fees are not recoverable in an action unless provided for by statute or by contract between the parties. *First Nat'l Bank v. Anderson Ford-Lincoln-Mercury, Inc*., 704 S.W.2d 83, 85 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

The amount of an attorney's fees award rests in the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that discretion. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 241-42 (Tex. 1985). An award of attorney's fees is not limited to the party affirmatively seeking declaratory relief. *Federal Deposit Ins. Corp. v. Bodin Concrete Co.*, 869 S.W.2d 372, 382 (Tex. App.—Dallas 1993, writ denied); *Knighton v. International Bus. Machs.*, 856 S.W.2d 206, 210 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

In this case, Haug invoked the UDJA in his counterclaim seeking a declaration to enforce the Grant of Easements as written and attorney's fees. The district court found that Haug's trial testimony was not credible. The court assigned Haug seventy-five percent of the attorney's fees because "his conduct in disputing the intended and agreed upon rights of the Thurman Bend Estates lot owners was not in good faith and substantially contributed to the necessity of this suit by plaintiffs and intervenor." Although Haug requested attorney's fees, the district court was properly

18

guided by its findings of fact to allocate attorney's fees against each defendant. *See Bodin Concrete Co.*, 869 S.W.2d at 382. Thus, we find no evidence that the district court abused its discretion in assigning attorney's fees. We overrule Haug's sixth issue.

## CONCLUSION

Because we overrule all of Haug's issues on appeal, we affirm the judgment of the district court reforming the easement into a lakeside park easement and assigning seventy-five percent of the attorney's fees against him.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 29, 2004

19