**Melquiades FLORES, Sr., Individually and as Representative of the Estate of his Son, Melquiades Flores, Jr., and Mary Flores, Appellants,**

v.

**NORTH AMERICAN TECHNOLOGIES GROUP, INC.; Tietek, Inc.; and Skillmaster Staffing Services, Inc., Appellees.**

No. 01–03–00419–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 28, 2004.

Rehearing Overruled March 1, 2005.

---

Donald Hamilton Kidd, Jeffrey L. Raizner, Michael P. Doyle, Doyle Raizner, L.L.P., Houston, for Appellants.

Margaret M. Munnelly, Christy A. Hext, Hext & Munnelly, L.L.P., Donald W. Gould, II, Johnson, Finkel, DeLuca & Kennedy, Houston, for Appellees.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

SHERRY RADACK, Chief Justice.

This is an appeal from a summary judgment rendered in favor of appellees, Tie-Tek, Inc., its parent company North American Technologies Group, Inc. (collectively "TieTek"), and Skillmaster Staffing Services, Inc. ("Skillmaster"). Appellants, Melquiades Flores, Sr. and Mary Flores ("the Floreses"), filed a wrongful death action for the death of their son, Melquiades Flores, Jr.'s ("Mike Flores"), from injuries he sustained while working on Tie-Tek's premises. On appeal, the issue is whether TieTek was Mike Flores's employer, thereby entitling TieTek to application of the exclusive remedy provision of the Texas Workers' Compensation Act ("TWCA").[1] We affirm.

## BACKGROUND

Skillmaster, a temporary employment agency that supplies labor to clients, hired Mike Flores. On June 6, 2001, Skillmaster assigned Mike Flores to work at the Tie-Tek plastics manufacturing plant. TieTek is in the business of producing and marketing railroad ties made from recycled materials. On August 6, 2001, TieTek entered into a master vendor agreement ("the contract") with Skillmaster for the placement of additional laborers at the Tie-Tek facility. The contract expressly re-

---

1. TEX. LAB.CODE ANN. § 408.001(a) (Vernon 1996).

quired that Skillmaster maintain workers' compensation insurance for personnel provided by Skillmaster to TieTek's facility, but passed the cost on to TieTek. On October 24, 2001, Mike Flores was fatally injured while working on a plastics molding machine at the TieTek facility. Appellants, Melquiades Flores, Sr. and Mary Flores, sued TieTek and Skillmaster for the wrongful death of their son, Mike Flores, resulting from on-the-job injuries. North American Technologies Group, Inc. and Tietek, Inc. are jointly represented and have filed all pleadings and motions together.

TieTek filed a motion for summary judgment contending that Mike Flores was its borrowed servant or, alternatively, that both TieTek and Skillmaster were co-employers of Mike Flores and that Flores's exclusive remedy against TieTek was limited to workers' compensation benefits given the statutory immunity provided by the TWCA. Tex. Lab.Code Ann. § 408.001 (Vernon 1996).[2] Skillmaster filed a no-evidence motion for summary judgment contending that it was Mike Flores's employer under the TWCA and thus protected by the exclusive remedy provision of TWCA. TieTek joined in Skillmaster's motion pursuant to Rule 58. Tex.R. Civ. P. 58. The trial court granted defendant Skillmaster's no-evidence motion for summary judgment as well as TieTek's traditional motion for summary judgment. Appellants filed a motion for new trial and/or to reconsider the summary judgments, but the trial court denied the motion after a hearing.

The Floreses appeal from the grant of summary judgment in favor of TieTek on three grounds. First, appellants contend that the trial court used the wrong test to determine whether TieTek was the employer of Mike Flores under TWCA and, thereby, whether it was entitled to summary judgment. Second, appellants contend that, even if the trial court used the proper test, TieTek was not Mike Flores's employer under the common-law right-to-control test. Third, appellants contend that TieTek was not Mike Flores's employer under the TWCA's definition of "employer."

On appeal, the Floreses concede that their exclusive remedy against Skillmaster is the recovery of workers' compensation benefits and that the trial court's grant of summary judgment in Skillmaster's favor "may not have been in error."[3] However, appellants complain that TieTek was not Mike Flores's employer, and thus, they may maintain a common-law wrongful death action against TieTek. TieTek argues that it was a borrowing employer or, alternatively, it was a co-employer with Skillmaster, and urged that the exclusive remedy provision in the TWCA applied to both TieTek and Skillmaster.

## DISCUSSION

In reviewing a summary judgment, an appellate court must consider

---

**2.** Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee. Tex. Lab. Code Ann. § 408.001(a).

**3.** Skillmaster submitted a brief "in the abundance of caution and in anticipation of the arguments to be brought by Appellee

NATG/TieTek." Neither appellee, NATG/TieTek, nor appellants raise any challenges on appeal of the trial court's judgment in favor of appellee Skillmaster. Therefore, we do not address the merits of the trial court's rendition of summary judgment in favor of Skillmaster. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993) (stating that an appellate court may not reverse the judgment of a trial court for a reason not raised in a point of error).

whether the successful movant at the trial level carried its burden of showing that there was no genuine issue of material fact and that judgment should be rendered as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). We assume all of the non-movant's evidence is true and indulge every reasonable inference in favor of the non-movant. *Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). If the movant can show it is entitled to judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a fact issue to defeat the motion for summary judgment. *Haight v. Savoy Apartments,* 814 S.W.2d 849, 851 (Tex. App.-Houston [1st Dist.] 1991, writ denied). When the trial court's order does not specify the grounds on which a motion for summary judgment was granted, we will affirm the summary judgment if any of the theories advanced in the motion is meritorious. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996).

## A. Status as an Employer

■ In their first point of error, appellants contend that the trial court erred in granting TieTek's motion for summary judgment because the trial court improperly employed the right-to-control test to determine whether TieTek was an employer for the purpose of workers' compensation law. An employer under the TWCA is protected by the exclusive remedy provision, which bars common-law causes of action claims by its injured employees. *See* TEX. LAB.CODE ANN. § 408.001 (Vernon 1996). Specifically, appellants argue that the Texas Supreme Court has rejected the right-to-control test in favor of the

TWCA's statutory definition of "employer," thereby requiring remand to the trial court. For their authority, appellants rely on *Wingfoot Enterprises v. Alvarado,* 111 S.W.3d 134 (Tex.2003).

Conversely, TieTek contends that the appellants' reliance on *Alvarado* is misplaced and that the trial court applied the proper standard for determining whether TieTek had employer status. TieTek claims that the *Alvarado* decision supports the trial court's grant of summary judgment in favor of both TieTek and Skillmaster because the Texas Supreme Court—notwithstanding a suggestion to the contrary in Justice Enoch's concurring opinion—did not eliminate the right-to-control test for determining whether an entity that controls the work of a borrowed employee is an employer for purposes of the TWCA. *See Alvarado,* 111 S.W.3d at 149, 150 (Enoch, J., concurring) (stating that "though rejecting the test, the Court appears to rely on that test"). Rather, TieTek claims that the Court "expressly recognized that the right of control test is still applicable."

The *Alvarado* court did not reject the right-to-control test used to determine an entity's status as an employer for purposes of the applicability of the TWCA, including its exclusive remedy provision. *Id.* at 141. In *Alvarado,* the Court held that an employee can have more than one employer for the purposes of the TWCA and its exclusive remedy provision. *Id.* at 144.[4] The facts of *Alvarado* were similar, but the inverse of those presented here, as *Alvarado* concerned the employer status of a temporary staffing company. Tandem, a temporary staffing provider, employed Alvarado, who was assigned to Web to do manual assembly work pursuant to an

---

**4.** The TWCA defines "employer" as "unless otherwise specified, a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage." TEX. LABOR CODE ANN. § 401.011(18) (Vernon 1996).

agreement between Tandem and Web. *Id.* at 135. After she sustained injuries while operating a machine at Web's manufacturing facility, Alvarado sued both Tandem and Web. *Id.* At the time of the injury, Tandem maintained workers' compensation insurance coverage for Alvarado, and Web also had workers' compensation insurance coverage for its employees. However, no agreement between the two companies stated which workers' compensation insurance policy would cover the Tandem-assigned workers at Web's facility. *Id.* Tandem's motion for summary judgment was granted, while the suit against Web proceeded to trial. *Id.* at 136. After a jury finding that Alvarado was Web's borrowed servant, the trial court rendered final judgment in Web's favor based on the exclusive remedy provision. *Id.* Alvarado appealed the summary judgment in favor of Tandem.

The Texas courts have long recognized that courts determine whether a workers' compensation insurance policy covers a worker's injury by determining whether the subscribing company is the worker's employer under the right-to-control test. *Texas Workers' Comp. Ins. Fund v. Del Indus., Inc.,* 35 S.W.3d 591, 595 (Tex.2000) (citing *Thompson v. Travelers Indem. Co.,* 789 S.W.2d 277, 278 (Tex.1990)). In fact, in *Alvarado* the supreme court implicitly recognized that a legitimate way for one to become an employer for TWCA purposes is through control: "The question we must decide is ... whether the exclusive remedy provision can apply to both the general employer and one who has become an employer by controlling the details of a worker's work at the time of injury." *Alvarado,* 111 S.W.3d at 139. If the court had "rejected the 'right to control' test to determine 'employer' status in the workers' compensation context," as appellants contend, there would be no reason to resolve the issue taken up by the *Alvarado* court.

Instead, the court's ruling left the right-to-control test unaffected as the court concluded, "The fact that Web actually controlled the details of Alvarado's work at the time she was injured, *and thus was also an employer within the meaning of the Act,* does not preclude the applicability of the Act's provisions, including the exclusive remedy, to both Tandem and Web." *Id.* at 149 (emphasis added).

The *Alvarado* court stressed, however, that it was deciding "only whether there may be two employers for workers' compensation purposes when a provider of temporary workers furnishes a worker to a client that controlled the details of the work at the time the worker was injured *and* there was no agreement between the provider of temporary workers and the client regarding workers' compensation coverage." 111 S.W.3d at 144 (emphasis added). The court expressly recognized, however, that some Texas courts of appeals have held that where there was a contract between a staffing company and its client regarding workers' compensation, "the client company is considered to be the employer for purposes of the exclusive remedy provision of the workers' compensation law...." *Id.* One of the courts of appeals so holding and cited by the supreme court in *Alvarado* was this Court. *Garza v. Excel Logistics, Inc.,* 100 S.W.3d 280, 287–88 (Tex.App.-Houston [1st Dist.] 2002, pet. granted January 30, 2004) (holding that, where contract between staffing company and client company did not directly address right to control employee, but did provide that cost of workers' compensation insurance would be borne by client company, right-to-control doctrine, rather than contract, controlled disposition of issue).

Here, as in *Garza,* there is an agreement between SkillMaster, the provider of temporary workers, and TieTek, its client,

which expressly provides that "SkillMaster shall maintain at its expense: (a) Workers' Compensation and Employer's Liability Insurance...." The agreement also provides, however, that the rates for the performance of the services provided by Skillmaster employees will be billed to TieTek at a given markup, including a 3% mark-up for worker's compensation, and that, if Skillmaster's costs increase for those services, specifically including costs for workman's compensation insurance, the agreed upon mark-up will be raised to cover the increased costs. Thus, TieTek is in the same position in this case as the client company, Excel, in *Garza*. Therefore, just as Web could be found by a factfinder to be an "employer" for the purpose of the TWCA's exclusive remedy provision based on its control over Alvarado in the absence of a contract regarding workers' compensation, and Excel could be found to be an employer for workers' compensation purposes based on its control over Garza despite the provision of worker's compensation by the staffing company, so too could TieTek be an "employer" if it exercised sufficient control over the details of the work performed by Mike Flores, even though workers' compensation insurance was procured for Flores by Skillmaster.

Accordingly, we overrule appellants' first point of error.

## B. Right–to–Control Test

■ In their second point of error, appellants contend that the trial court erred in granting TieTek's motion for summary judgment because they properly pleaded and offered evidence to show the existence of a material fact on TieTek's status as a "borrowing employer" under the right-to-control test. Specifically, appellants argue that TieTek, pursuant to the contract between TieTek and Skillmaster, did not provide sufficient control over Mike Flores for him to be classified as TieTek's borrowed servant. Rather, because the contract states that workers assigned to TieTek were "solely the employees of Skillmaster," it establishes that Skillmaster had control over all its employees that were assigned to TieTek, including Mike Flores.

In response, TieTek contends that it was entitled to summary judgment as a matter of law as either a borrowing employer of Mike Flores or, alternatively, a joint employer with Skillmaster. TieTek argues that, because the contract did not contain express language addressing who had the right to control, the contract is not controlling. Rather, the facts and circumstances of Mike Flores's employment should determine if TieTek qualifies as an employer under the common-law right-to-control test. TieTek argues that Mike Flores was supervised on a day-to-day basis by TieTek and specially trained for the work he was to perform by TieTek, not Skillmaster.

■ Texas has long recognized that a general employee of one employer may become the borrowed servant of another, special employer. *Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex. 1977); *Garza*, 100 S.W.3d at 284. The borrowed servant doctrine is implicated when the general employer loans or supplies an employee to another, who is then termed the special or borrowing employer. *Rodriguez v. Martin Landscape Mgmt., Inc.*, 882 S.W.2d 602, 604 (Tex.App.-Houston [1st Dist.] 1994, no writ). Whether a general employee of one employer has become the borrowed employee of another "employer" hinges on whether the other special employer has the right to direct and control the employee with respect to the details of the particular work at issue. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 537 (Tex.2002) (plurality opinion). The test is whether the borrowing employer has the right to control the progress,

details, and methods of operations of the work. *Limestone Prods. Distrib., Inc. v. McNamara,* 71 S.W.3d 308, 312 (Tex. 2002); *Farrell v. Greater Houston Transp. Co.,* 908 S.W.2d 1, 3 (Tex.App.-Houston [1st Dist.] 1995, writ denied). The borrowing employer must control not merely the end sought to be accomplished, but also the means and details of its accomplishment. *Thompson v. Travelers Indem. Co.,* 789 S.W.2d 277, 278 (Tex.1990). A contract between two employers providing that one shall have the right to control certain employees is a factor to be considered, but is not controlling, in determination of whether employee of one employer had become the borrowed servant of another employer. *Exxon Corp. v. Perez,* 842 S.W.2d 629, 630 (Tex.1992); *see Garza,* 100 S.W.3d at 285; *cf. Hoffman v. Trinity Indus., Inc.,* 979 S.W.2d 88, 90 (Tex. App.-Beaumont 1998, pet. dism'd by agr.) (fact issue raised by conflict between contract between staffing company and client company, which provided that staffing company would have "complete and sole control" over its employees and actual control exercised by client company precluded summary judgment in favor of client company on applicability of dual-employer theory for purposes of workers' compensation).

Here, the contract does not establish expressly who has the right to control workers assigned by Skillmaster to TieTek. The contract does indicate that Skillmaster maintained many responsibilities toward its employees even after they are assigned to TieTek:

> When requested, Skillmaster shall recruit, interview, evaluate, test, select, hire and train the persons who shall provide Services hereunder.... Skillmaster shall have sole responsibility to counsel, discipline, review, evaluate, set the pay rates of, and terminate its employees assigned to TieTek. Skillmaster assumes full responsibility for all contributions, taxes and assessments with respect to its employees under all applicable federal, state and local laws (including withholding from employees wages where required). Skillmaster further agrees that it will comply with all other applicable federal, state or local laws or regulations applicable to Skillmaster as an employer regarding compensation, hours of work or other conditions of employment.

Although TieTek had workers' compensation insurance for its own employees, Skillmaster paid for the workers' compensation insurance that covered employees even after they were assigned to TieTek "at its own expense," although it passed those costs on to TieTek. Skillmaster also enforced a code of conduct that covered employees even after they were assigned to work at its clients' facilities like TieTek's. In addition, Skillmaster performed ongoing safety services to its clients pursuant to the contract, which included an initial site inspection, walk-throughs and hazard assessments of the facilities, OSHA compliance inspections at the client's premises, and preliminary safety training before the employees report to the client's premises. Nevertheless, the performance of these tasks by Skillmaster does not demonstrate Skillmaster's control over the workers assigned to TieTek so much as Skillmaster's exercise of responsibilities owed to its client, TieTek under the contract.

■ As appellants concede, the contract between Skillmaster and TieTek is not specific as to who shall control the day-to-day activities of Skillmaster employees assigned to TieTek. When the contract between the employers contains no provision for right to control, right to control is "necessarily determined as an inference

from such facts and circumstances as the nature of the general project, the nature of the work to be performed by the machinery and employees furnished, length of the special employment, the type of machinery furnished, acts representing an exercise of actual control, the right to substitute another operator of the machine, etc." *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 226 (Tex.1963).

TieTek's deposition testimony demonstrates that TieTek exercised control over Mike Flores's actions. The deposition of Henry Sullivan, TieTek's president, indicates that two TieTek employees, foreman Mike Cline and plant manager Kreg Inman, were personally responsible for providing hands-on training to Mike Flores and for ensuring he could properly operate each piece of machinery to which he was assigned, including the molding machine upon which he worked on the date of the accident. Sullivan further noted that, although Skillmaster's employees came to TieTek with general safety training, TieTek assumed that the employees came not knowing anything about the machines actually used in the plant. In an affidavit given after his deposition, Sullivan wrote that Mike Flores "was directly supervised by TieTek employees," as were all Skillmaster employees assigned to TieTek.

Similarly, a former safety consultant for Skillmaster, Jewell English, who worked at Skillmaster at the time of Mike Flores's death, discussed Skillmaster's control over employees in his deposition testimony:

> As far as ... his [a Skillmaster employee assigned to work for a client] day-to-day activity, the client is responsible for his day-to-day activities. Skillmaster payrolls, you know, we'll actually—the check will say Skillmaster, but his day-to-day activities are monitored by the clients. Skillmaster really doesn't have a say in what the employee is doing on a minute-to-minute or hour-to-hour basis.

English also revealed that, although Skillmaster technically had the authority to fire the employees it assigned to TieTek, the authority was not used unless a client requested that Skillmaster fire an employee based on the employee's performance at the client's facility or an employee violated a Skillmaster policy. English testified that TieTek employees and Skillmaster-assigned workers "worked together" side by side, but it was up to the client, TieTek, to determine which employees were to be assigned to do what work at the facility.

Furthermore, Michael Cline, a shift supervisor for TieTek, provided deposition testimony that Skillmaster did not have any management personnel on-site at the TieTek facility on a day-to-day basis. Cline answered that providing such management personnel was TieTek's responsibility, not Skillmaster's. In fact, part of Cline's job was to provide adequate training, ensure awareness of safety procedures, and to provide tools for the proper operation of machinery at the TieTek plant. Although TieTek did not pay the wages of Skillmaster-assigned workers, Cline dealt with issues of vacation, time off, attendance, and discipline for all workers on his shift, regardless of whether they were assigned by Skillmaster or not. TieTek's plant manager, Kreg Inman, agreed that "TieTek's was responsible for assigning [Skillmaster-assigned workers] to their particular jobs, for training those individuals in operational training as well as safety training, and for discipline and terminating those individuals."

Indulging every reasonable inference in appellants' favor, the evidence demonstrates no genuine issue as to the fact that

TieTek controlled the details of Mike Flores's work and thus satisfied, as a matter of law, the requirement to prove that Mike Flores was the borrowed servant of TieTek. Hence, Tie Tek is an employer for purposes of asserting the exclusive remedy provision of the TWCA.[5] Accordingly, we overrule appellants' second point of error.

## C. Statutory Definition of Employer

In their final point of error, appellants contend that the trial court erred in granting TieTek's motion for summary judgment because they properly pleaded and offered evidence to show the existence of a material fact on TieTek's "employer" status under the TWCA statutory definition. Because we have determined that Flores was a borrowed servant of TieTek under the right-to-control test, we need not reach this remaining point of error.

5. Numerous courts have upheld a trial court's grant of summary judgment in favor of an employer when it has been found that there is no genuine issue as to the movant's right to control the plaintiff. *See, e.g., Garza,* 100 S.W.3d at 287 (affirming trial court's summary judgment in favor of employer Excel after review of summary judgment evidence indicated that Excel had right to control plaintiff-employee Garza); *Rodriguez,* 882 S.W.2d at 604 (upholding summary judgment in favor of Martin Landscape Management where summary judgment evidence established it had right to control plaintiff-employee Rodriguez); *Gibson v. Grocers Supply Co., Inc.,* 866 S.W.2d 757, 760 (Tex.App.-Houston [14th Dist.] 1993, no writ) (upholding summary judgment of employer, Grocers Supply, where evidence established it had right to control details and manner in which employee performed his job); *Marshall v. Toys–R–Us Nytex, Inc.,* 825 S.W.2d 193, 196–97 (Tex. App.-Houston [14th Dist.] 1992, writ denied) (upholding summary judgment in favor of temporary employer, Toys–R–Us, where evidence established as a matter of law that it had right to control employee Marshall at time of accident); *Chapa v. Koch Refining Co.,*

### CONCLUSION

Because the trial court did not err in granting summary judgment, we affirm the trial court's judgment.

985 S.W.2d 158, 161 (Tex.App.-Corpus Christi 1998), *rev'd on other grounds,* 11 S.W.3d 153 (Tex.1999) (court of appeals upholding summary judgment in favor of employer H & S because plaintiff-employee Chapa served as H & S's borrowed servant). *See also Producers Chem. Co. v. McKay,* 366 S.W.2d 220, 226 (Tex.1963) (explaining that:

When a contract, written or oral, between two employers expressly provides that one or the other shall have right of control, solution of the question [of determining who has right to control an employee] is relatively simple.... It is when the contract between the employers is only implied or contains no provision for right of control that the problem becomes difficult. In such cases right of control is necessarily determined as an inference from such facts and circumstances as the nature of the general project, the nature of the work to be performed by the machinery and employees furnished, length of the special employment, the type of machinery furnished, acts representing an exercise of actual control, the right to substitute another operator of the machine, etc.) (citations omitted).