In re Christopher ALLAN,
M.D., Relator.

No. 12–06–00040–CV.

Court of Appeals of Texas,
Tyler.

April 27, 2006.

Bill Liebbe, Tyler, for relator.

Joel J. Steed, Rockwall, for Donald Knarr, M.D., and Trinity Mother Frances Health System.

Douglas R. McSwane, Potter Minton, PC, Tyler, for Tyler Cardiovascular Consultants, P.A.

Don Kent, Kent, Good, Anderson & Bush, PC, Tyler, for Jack Jorden, M.D.

Panel consisted of WORTHEN, C.J. and GRIFFITH, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

In this original mandamus proceeding, Christopher Allan, M.D. complains of the trial court's order denying his petition to take depositions pursuant to Texas Rule of Civil Procedure 202.[1] The issue in this proceeding is whether Texas Civil Practice and Remedies Code subsection 74.351(s) prohibits presuit depositions under Rule 202. This issue is one of first impression. We conditionally grant the requested relief.

## BACKGROUND

Christopher Allan, M.D. filed a petition for depositions pursuant to Texas Rule of Civil Procedure 202 to investigate a potential claim or suit arising out of the medical care of his mother. In his petition, Allan requested an order authorizing him to take the oral and videotaped depositions of Jack Jorden, M.D., Donald Knarr, M.D., the Chest Pain Center coordinator for Trinity Mother Frances Hospital Systems, and a representative of Tyler Cardiovascular Consultants, P.A. Respondent conducted a hearing on Allan's petition during which Dr. Jorden, Dr. Knarr, Trinity Mother Frances, and Tyler Cardiovascular Consultants (collectively "real parties") contended that the Texas Medical Liability Act (TMLA or Chapter 74)[2] prohibits presuit depositions in a health care liability claim. Approximately three weeks later, Respondent signed a written order denying Dr. Allan's petition. The order stated in part as follows:

The Court finds that under the facts alleged in this case there is a conflict between Chapter 74 of the Texas Civil Practice and Remedies Code and Rule 202 of the Texas Rules of Civil Procedure. The Court finds that Section 74.002 of the Texas Civil Practice and Remedies Code controls and resolves the said conflict and mandates the Court not approve the requested Rule 202 depositions of various healthcare providers. The Court further finds persuasive the opinions of *In re Miller,* 133 S.W.3d

---

1. The respondent is the Honorable Kerry L. Russell, Judge of the 7th Judicial District Court of Smith County.

2. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–.507 (Vernon & Supp.2005).

816 (Tex.App.-Beaumont, 2004) and *In re Huag,* 175 S.W.3d 449, 456 (Tex.App.-Houston [1st Dist.] ). The Houston Court of Appeals stated: "Significantly, the only types of discovery *not excepted from the stay* in subsection 74.351(s) are the oral depositions of parties and *presuit depositions.*" *Id.* at 456. The Court further finds no other Court appears to have addressed this specific issue and it is a case of first impression. This original proceeding followed.

### AVAILABILITY OF MANDAMUS

 Mandamus will issue to correct a clear abuse of discretion where there is no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 839–49 (Tex.1992). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.* at 849. Interpretation of a statute is a pure question of law over which the trial court has no discretion. *In re Canales,* 52 S.W.3d 698, 701 (Tex.2001). An appellate remedy is "adequate" when any benefits to mandamus review are outweighed by the detriments. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 136 (Tex.2004) (orig.proceeding). When the benefits outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate. *Id.* This determination depends heavily on the circumstances presented and is better guided by general principles than by simple rules. *Id.* at 137. The party seeking the writ of mandamus has the burden of showing that the trial court abused its discretion. *In re E. Tex. Med. Ctr. Athens,* 154 S.W.3d 933, 935 (Tex.App.-Tyler 2005, orig. proceeding).

### RULE 202 v. SUBSECTION 74.351(S)

Rule 202 permits a person to petition the court for an order authorizing an oral or written deposition before suit is filed.

TEX.R. CIV. P. 202.1 & cmt. 1. The deposition may be taken to perpetuate testimony for use in an anticipated suit or to investigate a potential claim or suit. *Id.* A deposition may be ordered only if the trial court finds that allowing the petitioner to take the requested deposition may prevent a failure or delay of justice in an anticipated suit or, where the deposition is to investigate a potential claim, that the likely benefit outweighs the burden or expense of the procedure. TEX.R. CIV. P. 202.4(a).

Section 74.351, a part of the TMLA, provides that in a health care liability claim, a claimant must provide one or more expert reports and a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2005). Subsection 74.351(s), the subject of this proceeding, states as follows:

> (s) Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:
>
> (1) written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure;
>
> (2) depositions on written questions under Rule 200, Texas Rules of Civil Procedure; and
>
> (3) discovery from nonparties under Rule 205, Texas Rules of Civil Procedure.

*Id.* § 74.351(s). The real parties contend that the stay of "all discovery in a health care liability claim" includes Rule 202 depositions, thereby creating a conflict between Rule 202 and Subsection 74.351(s).

To determine whether such a conflict exists, we must construe Subsection 74.351(s).

In construing a statute, our primary objective is to determine and give effect to the legislature's intent in enacting it. *McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003). We start with the plain and common meaning of the statute's words. *Id.* Unless a statute is ambiguous, we determine the legislature's intent from the language of the statute itself. *Continental Cas. Co. v. Downs,* 81 S.W.3d 803, 805 (Tex.2002). We must presume that every word of a statute has been used for a purpose and that every word excluded from a statute has been excluded for a purpose. *Laidlaw Waste Sys., Inc. v. Wilmer,* 904 S.W.2d 656, 659 (Tex.1995). Regardless of whether the statute is ambiguous, we may consider its legislative history. TEX. GOV'T CODE ANN. § 311.023(3) (Vernon 2005).

### ABUSE OF DISCRETION

The discovery stay imposed by Subsection 74.351(s) applies in a "health care liability claim." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(s). The real parties characterize Dr. Allan as one having a "potential" cause of action and argue that a "health care liability claim" includes potential, as well as existing, causes of action. Therefore, the real parties conclude, the discovery stay is in effect and that Respondent properly denied Dr. Allan's petition for Rule 202 depositions. The real parties further assert that the Subsection 74.351(s) prohibition of presuit depositions conflicts with Rule 202 and that Subsection 74.351(s) controls. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.002(a) (Vernon 2005)

(providing that Chapter 74 controls in the event it conflicts with a rule of procedure). Dr. Allan counters that no conflict exists between Subsection 74.351(s) and Rule 202, that Chapter 74 does not apply to these proceedings, and that the legislative history of Chapter 74 does not support the real parties' argument. The resolution of the matter turns on whether the definition of a "health care liability claim" includes potential, as well as existing, causes of action.

### Statutory Language

A "health care liability claim" is defined in the TMLA as a "cause of action" against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(13) (Vernon 2005). At common law,[3] a "cause of action" ordinarily consists of two distinct and separate elements, the primary right and duty of the parties respectively and the wrongful act or omission violating it. *Mercantile Bank & Trust Co. v. Schuhart,* 115 Tex. 114, 277 S.W. 621, 623–24 (1925). A "cause of action" has also been said to consist of those facts entitling one to institute and maintain an action at law or in equity. *A.H. Belo Corp. v. Blanton,* 133 Tex. 391, 129 S.W.2d 619, 621 (1939); *F.D.I.C. v. Bodin Concrete Co.,* 869 S.W.2d 372, 378 (Tex.App.-Dallas 1993, writ denied). Thus, a "cause of action" encompasses every essential fact that

**3.** "Any legal term or word of art used in [the TMLA], not otherwise defined in [the Act] shall have such meaning as is consistent with the common law." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(b) (Vernon 2005). The TMLA does not contain a definition of "cause of action."

a plaintiff must prove to obtain a judgment. *F.D.I.C.*, 869 S.W.2d at 378.

Implicit in the definition of "cause of action" is that the essential facts are known. Here, Dr. Allan's cause of action is described as "potential" because he does not know the facts relating to his mother's care. When he learns those facts, he may conclude that he does not have a "cause of action." The common law definition of "cause of action" does not contemplate such a scenario. Consequently, a "potential cause of action" is not a "cause of action" as that term is defined at common law. Therefore, the plain language of Subsection 74.351(s) does not support a conclusion that the legislature intended to characterize a potential cause of action as a "health care liability claim." Nonetheless, the real parties argue that the legislature intended to afford health care providers protection from potential causes of action as evidenced by the number of safeguards enacted to protect health care providers. Dr. Allan contends that the legislative history shows a contrary intent.

### Legislative History [4]

In the earliest version of HB 4 (now the TMLA), a "health care liability claim" was defined as

> a cause of action against a health care provider or physician arising out of or related to treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services practice or procedure which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

H.R. Committee on Civil Practices, Committee Substitute, H.B. 4 § 10.01(a), 78th Legislature, R.S. (March 7, 2003). This version of HB 4 provided that "[n]otwithstanding the provisions of Rule 202, Texas Rules of Civil Procedure, a deposition may not be taken of a physician or health care provider for the purpose of investigating a health care liability claim before the filing of a lawsuit." *Id.* § 10.03(f). The same version of HB 4 also provided that all discovery would be stayed until the expert reports and curriculum vitae were served except for "the acquisition of the patient's medical records, medical or psychological studies or tissue samples through" written discovery, depositions on written questions, and discovery from nonparties. *Id.* § 10.15(s). Finally, this version of HB 4 included a provision that "[n]otwithstanding Section 22.004, Government Code, the supreme court may not amend or adopt rules in conflict with this Act." *Id.* § 1.04(b).

The Engrossed Version of HB 4 retained the earlier definition of "health care liability claim" and the provision prohibiting the Texas Supreme Court from adopting rules that would conflict with the Act. Engrossed Version, Tex. H.B. 4, §§ 10.01(4), 1.04(b), 78th Leg., R.S. (March 31, 2003). This version also retained the stay of discovery before service of expert reports and curriculum vitae except for discovery of medical records, studies, and tissue samples by written discovery, depositions on written questions, and discovery from nonparties. *Id.* § 10.15(s). However, unlike the prior version, the Engrossed Version provided that Rule 202 depositions could be taken for the purpose of investigating a health care liability claim before the filing of a lawsuit if, among other

---

**4.** The history of HB 4 during the 78th legislative session can be found at www.capi-tol.state.tx.us.

things, "it cannot be reasonably determined from the records provided what sequence of events occurred in the relevant treatment or events, or cannot be reasonably determined who was present, involved, participated in or observed the events in question." *Id.* § 10.03(f).

The Senate State Affairs Committee, chaired by Senator Bill Ratliff, heard testimony on the effects of prohibiting or limiting the availability of Rule 202 depositions. At the time of this testimony, the Engrossed Version of HB 4 had already been filed by the Texas House. The testimony before the State Affairs Committee was that requiring an outcome dispositive report with no discovery in a health care liability claim would impose an impossible burden on claimants. Specifically, without presuit depositions, a claimant would be unable to serve an outcome dispositive report that satisfies the requirements of an expert report in a health care liability claim. The testimony pointed out the problems with an expert's evaluating a doctor's conduct based solely upon medical records without being able to ask questions about the records. The testimony further pointed out that the purpose of a Rule 202 deposition is to allow investigation of a claim to determine whether certain defendants should be brought in or the claims should be brought. A limit of five depositions was proposed, either under Rule 202 or at the discovery phase before the expert report is filed. It was also suggested in the testimony that the limitations specifically relating to Rule 202 depositions should be taken out of H.B. 4 because "judges already look very carefully at whether or not to allow 202 depositions." *Hearings on Tex. H.B. 4 Before the Sen. Comm. on State Affairs,* 78th Leg., R.S. 2–3, 7–8 (April 16, 2003; May 5, 2003) (transcript available from Legislative Intent Research).

On May 14, 2003, the Senate State Affairs Committee filed the Senate Committee Report Version of H.B. 4. This version removed all provisions that would have prohibited, restricted, or limited Rule 202 depositions to investigate potential claims involving health care providers and removed the reference to section 22.004 of the Texas Government Code. SEN. COMMITTEE ON STATE AFFAIRS, COMMITTEE SUBSTITUTE, Tex. H.B. 4, § 10.01, 78th Leg., R.S. (May 14, 2003). The prior definition of "health care liability claim" remained unchanged. *Id.*

To summarize, the Texas Legislature initially considered a complete prohibition of Rule 202 depositions to investigate potential claims involving health care providers, then considered restricting Rule 202 depositions in those claims, but in the final bill did not limit, restrict, or prohibit Rule 202 depositions to investigate potential claims involving health care providers. During its consideration of these provisions, the definition of "health care liability claim" remained the same. If, as the real parties contend, the legislative definition of "health care liability claim" encompasses potential causes of action, the legislature's actions relating to Rule 202 depositions were unnecessary because the depositions are stayed under Subsection 74.351(s) until the expert reports and curriculum vitae are filed. It is therefore reasonable to assume from this legislative history that the legislature did not intend for a potential claim or cause of action to be characterized as a "health care liability claim."

### Conclusion

We hold that the definition of "health care liability claim" does not include a potential cause of action. Thus, the stay of discovery imposed by Subsection 74.351(s) does not preclude Rule 202 depositions. As such, no conflict exists between Subsection 74.351(s) and Rule

202. Accordingly, Respondent's order denying Dr. Allan's Rule 202 petition for the reasons stated in the order constitutes an abuse of discretion.

### ADEQUATE REMEDY BY APPEAL

■ We also conclude that appeal is not an adequate remedy. Whether Rule 202 depositions are stayed by Subsection 74.351(s) is a question of law that is likely to recur. *In re Prudential,* 148 S.W.3d at 138. Moreover, a ruling on a Rule 202 petition is a final, appealable order only if the petition seeks discovery from a third party against whom a suit is not contemplated. *Thomas v. Fitzgerald,* 166 S.W.3d 746, 747 (Tex.App.-Waco 2005, no pet.); *see Ross Stores, Inc. v. Redken Labs., Inc.,* 810 S.W.2d 741, 742 (Tex.1991) (applying predecessor to Rule 202). The ruling is interlocutory if discovery is sought from a person against whom there is a suit pending or against whom a suit is specifically contemplated. *IFS Security Group, Inc. v. American Equity Ins. Co.,* 175 S.W.3d 560, 563 (Tex.App.-Dallas 2005, no pet.); *Thomas,* 166 S.W.3d at 747. Here, Dr. Allan contemplates filing suit against those named in his petition. Consequently, Respondent's order is interlocutory and not immediately appealable.

Dr. Allan represents that he has insufficient information to file suit against any of the individuals or entities named in his Rule 202 petition without violating Texas Rule of Civil Procedure 13 and section 9.011 of the Texas Civil Practice and Remedies Code.[5] He also states that he will be unable to obtain an adequate expert report because he cannot determine the sequence of events that occurred in his mother's care. If Dr. Allan does not file suit, any claim he may have will be lost. If he files suit without investigating his claim but is unable to obtain an adequate expert report, his suit will be dismissed with prejudice. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b) (Vernon Supp.2005). In either event, his right to investigate the facts of his mother's care prior to filing suit cannot be restored. Moreover, if Dr. Allan files suit and the case proceeds to final judgment, appellate review is problematic as well. *See In re Prudential,* 148 S.W.3d at 138 (discussing unavailability of appeal from favorable judgment and difficulty of reversing unfavorable judgment).

We hold that, in this case, the benefits of mandamus outweigh the detriments. Therefore, appeal is an inadequate remedy for Dr. Allan.

### DISPOSITION

Having held that Respondent abused his discretion and that appeal is an inadequate remedy, we conditionally grant the writ of mandamus. We are confident, however, that Respondent will vacate his order denying Dr. Allan's petition for Rule 202 depositions within ten days of the date of this opinion and corresponding order and then proceed to the merits of Dr. Allan's petition.

DeVASTO, J., not participating.

---

**5.** Rule 13 provides that the signatures of attorneys or parties constitute a certificate by them that they have read the signed pleading, motion, or other paper and, that to the best of their knowledge, information, and belief formed after reasonable inquiry, the instrument is not groundless and brought in bad faith or for the purpose of harassment. TEX.R. CIV. P. 13. Section 9.011 contains similar language and further provides that the signature also constitutes a certificate that the pleading is not groundless and interposed for any improper purpose, such as to cause unnecessary delay or needless increase in the cost of litigation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 9.011 (Vernon 2002).