Opinion issued July 29, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00239-CV

———————————

Tony Draper, Appellant

V.

American
Rice, Inc.,
Appellee



 



 

On Appeal from the 412th District Court

Brazoria County, Texas



Trial Court Case No. 46393

 



 

MEMORANDUM OPINION

          Appellant,
Tony Draper, sued American Rice, Inc. for negligence for injuries sustained
while working in the Domestic Packaging Department of its Freeport, Texas
warehouse.  American Rice filed a
traditional motion for summary judgment. 
After a hearing, the trial court granted the summary judgment and
entered a take nothing judgment.  Draper
appealed, arguing in three issues that the trial court erred in granting the
summary judgment because: (1) he presented evidence of a genuine issue of
material fact pertaining to whether American Rice was an “employer” under the
Worker’s Compensation Act; (2) American Rice was not his employer under the
Worker’s Compensation Act; and (3) American Rice should be equitably estopped
from arguing that he is its employee because its contracts indicate that he was
not its employee.

We affirm.

BACKGROUND

          On
July 10, 2007, appellant, Tony Draper, was working in the Domestic Packing
Department of American Rice, Inc.  Draper
obtained the job through Recana Solutions, a temporary employment agency, which
provided temporary employees, including Draper, to American Rice.  On that day, Draper was lifting and moving
boxes.  Around 2:00 p.m., he collapsed
from overheating and was taken by ambulance to a hospital.  According to his original petition, he spent
23 days in the hospital.  Draper filed
for workers’ compensation.  As of
December 29, 2008, Texas Mutual Insurance Company had paid $126,375.42 in
Draper’s medical bills under a worker’s compensation policy taken out by
Recana.

On February
19, 2008, Draper sued American Rice, claiming that it was negligent for failing
to provide him with a safe working environment. 
At the time of Draper’s injury, American Rice likewise had a worker’s
compensation insurance policy, issued to it by American Home Assurance Company.  On December 24, 2008, American Rice
filed a motion for summary judgment, arguing that Draper’s suit was
barred by the exclusive remedy provision of the Texas Workers’ Compensation Act
(TWCA) and the borrowed servant doctrine. 
On March 3, 2009, the trial court held a hearing on American Rice’s
motion, and it granted the motion seven days later.  Draper appealed.   

STANDARD OF REVIEW

In
reviewing a traditional summary judgment, an appellate court must consider
whether the successful movant at the trial level carried its burden of showing
that there was no genuine issue of material fact and that judgment should be
rendered as a matter of law.  Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  We assume all of the non-movant’s evidence is
true and indulge every reasonable inference in favor of the non-movant.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  If the movant can show it is entitled to
judgment as a matter of law, the burden shifts to the non-movant to present
evidence raising a fact issue to defeat the motion for summary judgment.  Haight
v. Savoy Apts., 814 S.W.2d 849, 851 (Tex. App.—Houston [1st Dist.] 1991, writ denied).  When the trial court’s order does not specify
the grounds on which a motion for summary judgment was granted, we will affirm
the summary judgment if any of the theories advanced in the motion is meritorious.
 Cincinnati
Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996).

ANALYSIS

A.        Status of American Rice as Draper’s
Employer   

In his first and second points of
error, Draper argues that the trial court erred in granting American Rice’s
motion for summary judgment because American Rice was not Draper’s employer as
defined by the TWCA as a matter of law and Draper presented contractual
evidence and testimony raising a fact issue as to whether American Rice was his
employer so as to trigger the exclusive remedy provision of the TWCA.

          The
relationship between Recana and American Rice was governed by a contract that
provided, in relevant part:

1.1     Recana shall provide ARI with experienced
and qualified employees of Recana (“Personnel”) to perform services as
requested by ARI.  ARI shall have the
right to accept or reject Personnel referred by Recana for any reason, and ARI
shall have the right to request replacement Personnel at any time.

 

1.4
    Recana is an independent contractor,
and not an employee, agent, partner, or joint venture partner of ARI.  ARI does not undertake by this Agreement or
otherwise to perform any obligation of Recana, whether by regulation or
contract.

 

2.1     Personnel shall at all times be and remain
employees of Recana, and Personnel shall under no circumstances be considered
employees, agents, or independent contractors of ARI.  Recana shall be solely responsible for all
salaries, benefits, taxes, social security, Medicare, and other withholding
requirements applicable to Personnel. 

 

2.2     Recana shall provide Personnel who are
capable of performing the work for which they are submitted. . . .

 

6.1     ARI will provide Recana with adequate space
within the Freeport Plant facility for use as a Management and Coordination
area. The space shall be readily accessible for new Personnel. Recana agrees to
staff the Management and Coordination area with an On-Site Manager/Coordinator.

 

6.2
    The Recana On-Site Manager/Coordinator
will coordinate staffing requirements and ensure that staffing schedules are
filled; resolve contractor related problems; answer contractor questions; pick
up time cards and deliver checks; act as a liaison between ARI and Recana
personnel, and carry out any other duties required to ensure efficient
contractor operations at the plant.  The
On-Site Manager/Coordinator will work closely with applicable plant supervisors
to ensure no contractor related issues disrupt the work-flow and production of
the plant.

 

7.1     Recana shall subscribe for and maintain in
fill force and effect during the term of this Agreement all insurance described
below, at a minimum. . . 

 

a.     Comprehensive General
Liability Insurance including contractual liability coverage, bodily injury and
property damage coverage. . . 

 

b.     Workers’ Compensation
Insurance and Occupational Disease Instances as required by law, and Employer’s
Liability Insurance with limits of no less than $1,000,000.00, or the amount
required by law, whichever is higher, for accidents or occupational disease covering
all work related to this Agreement.

 

c.      Basic Automotive Liability
Insurance. . . .

 

          As
summary judgment evidence, both parties presented depositions and affidavits
regarding the control over Draper’s work at the time of his injury.  Terry Wiley, the Recana employee who was
responsible for providing and supervising workers, testified that he was
Draper’s Recana supervisor on the day of Draper’s injury but that he did not
specifically supervise Draper’s work.  Rather,
he supervised Recana employees “all over the plant.”  However, if a worker provided by Recana
encountered a problem, then the worker would “go to the foremen and the foreman
would get in touch with [him].”  He testified
that the “American Rice guys, they supervise[d] [Draper].”  He also testified that he would “give” Draper
to American Rice and they would tell him where to work, but if he saw Draper
doing something wrong he was permitted to “talk to” him about it.  He did not, however, give Draper any
instructions on the morning of Draper’s injury; instead the instructions would
have come from a supervisor at American Rice. 
Wiley testified that his own office was “just down the road” from where
Draper worked. 

          Richard
Schneider, the packaging manager for American Rice, also provided deposition and
affidavit testimony.  He testified that,
based on the contract between Recana and American Rice, Draper was considered
an employee of Recana.  Schneider walked
around the factory to make sure things were operating properly.  If there was a problem with a Recana employee,
he could talk with the employee’s supervisor or he could direct him as
“need[ed] to make the business go.”  On
the morning of Draper’s injury, a person from American Rice would have told
Draper where to work and what to do. 
American Rice assigned both American Rice employees and Recana Temps to
work on particular machines in the Domestic Packaging Department.

Schneider testified, “With respect
to Recana Temps who work at [American Rice] in the Domestic Packaging
Department, [American Rice] supervisors have the right to direct and control
them with respect to the details of their particular work.”  He further testified that American Rice “supervisors
direct the Recana Temps where to work and what do when they come to work in the
Domestic Packaging Department.”  Moreover,
“[w]hile Recana has a manager/coordinator person on-site at the [American Rice]
facilities who helps coordinate staffing of the Recana Temps, [American Rice]
Supervisors have the right to control the progress, details and method of
operations of the Recana Temps while they are working in the Domestic Packaging
Department.”  Schneider also testified
that an American Rice supervisor can dismiss a Recana Temp.  He concluded by testifying that

[American Rice] controls all
the details of how the Domestic Packaging Department is run. All of the orders,
directions, and instructions for doing the work in the Domestic Packaging
Department come from [American Rice]. 
All employees, including Recana Temps, are required to follow [American
Rice’s] rules, policies and procedures regarding working in the packaging
department.

 

          Draper,
by contrast, directs us to the contract between American Rice and Recana, which
he contends established that he and the other Recana temporary workers were not
employees of American Rice.  He argues
that because the contract required Recana to pay his salary, payroll taxes,
social security, and other deductions he was a Recana employee rather than an
employee of American Rice.  He also
argues that paragraph 7.1 of the contract between Recana and American Rice
required Recana to have its own workers’ compensation policy and that this made
him a Recana employee rather than an employee of American Rice.  

Section 408.001 of the Texas Labor
Code provides that “[r]ecovery of workers’ compensation benefits is the
exclusive remedy of an employee covered by workers’ compensation insurance
coverage . . . against an employer . . . for . . . a work-related injury
sustained by an employee.”  Tex. Lab. Code Ann. § 408.001(a) (Vernon 2006).  Thus, the causes of action available to
Draper against American Rice depend upon whether American Rice was (1) his
employer and covered by workers compensation insurance, (2) his employer and
not covered by workers compensation insurance, or (3) not his employer.  Garza v. Exel Logistics, Inc., 161 S.W.3d 473, 475 (Tex. 2005).  In the first instance, Draper’s exclusive
remedy would be the recovery of workers’ compensation benefits.  Id.  In the second, he would be required to prove
that his injuries were caused by American Rice or its “agent, servant or
employee acting within the general scope of employment.”  Id.  In the third instance, he would have
available all causes of action, and American Rice would have all available
defenses.  Id.  

          Here, it is undisputed that American
Rice was covered by workers’ compensation insurance at the time of Draper’s
injury.[1]  Therefore, to recover against American Rice
in this suit, Draper had to prove that American Rice was not his employer under
the TWCA,[2]
so that Draper’s suit was not barred by the exclusive remedy provision in
section 408.001 of the Labor Code.  See id.

Under the TWCA, an employer is defined as “a person who makes a contract
of hire, employs one or more employees, and has workers’ compensation insurance
coverage.”  Tex. Lab. Code Ann. § 401.011(18) (Vernon Supp. 2009).  A person may have more than one
employer for workers’ compensation purposes under the TWCA.  Wingfoot
Enters. v. Alvarado, 111 S.W.3d 134, 139–40 (Tex. 2003).  In particular, a temporary employee in
Draper’s position may be working for a temporary staffing provider, the
“general employer” (here, Recana) and “also be subjected to laboring in the
workplace and under the general employer’s client company,” a “special
employer” (here, American Rice).  See Wingfoot Enters., 111 S.W.3d at 142–43.  “An employee injured while working under the
direct supervision of a client company is conducting the business of both the
general employer and that employer’s client.” 
Id. at 143.  Thus, “the employee should be able to pursue
worker’s compensation from either.”  Id. 

The “borrowed servant” doctrine
applies in determining whether an entity was an injured worker’s “special employer.”  See Flores
v. N. Am. Tech. Group, Inc., 176 S.W.3d 442, 448 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).  “Texas has long recognized that a general
employee of one employer may become the borrowed servant of another, special
employer.”  Id.  “The borrowed servant
doctrine is implicated when the general employer loans or supplies an employee
to another, who is then termed the special or borrowing employer.”  Id.  “Whether a general employee of one employer
has become the borrowed employee of another ‘employer’ hinges on whether the
other special employer has the right to direct and control the employee with
respect to the details of the particular work at issue.”  Id.
at 448–49.  “The test is whether the
borrowing employer has the right to control the progress, details, and methods
of operations of the work.”  Id. (citing Limestone Prods. Distrib., Inc. v. McNamara, 71 S.W.3d 308, 312
(Tex. 2002)).  “The borrowing employer
must control not merely the end sought to be accomplished, but also the means
and details of its accomplishment.”  Id. at 449 (citing Thompson v. Travelers Indem. Co., 789 S.W.2d 277, 278 (Tex.
1990)).  

Thus, “in determining if a general
employee of a temporary employment agency is also an employee of a client
company for purposes of the [TWCA], we consider traditional indicia, such as
the exercise of actual control over the details of the work that gave rise to
the injury.”  Garza, 161 S.W.3d at 477; see
also Flores, 176 S.W.3d at 446 (holding that employer status under TWCA can
be determined by control).  To prove that claims made against it by an injured
temporary worker on loan from a general employer are barred by the exclusive
remedy provision in section 401.011(18) of the Labor Code, an alleged special
employer must prove as a matter of law that it had workers’ compensation
insurance at the time of the employee’s injury and that it controlled the
details of the employee’s work.  See Garza,
161 S.W.3d at 475–77; see also Wingfoot
Enters., 111 S.W.3d at 140, 145.

“A contract between two employers
providing that one shall have the right to control certain employees is a
factor to be considered, but is not controlling, in the determination of
whether [the] employee of one employer had become the borrowed servant of another
employer.”  Flores, 176 S.W3d at 449 (citing Exxon Corp. v. Perez, 842 S.W.2d 629, 630 (Tex.1992)).  When a contract is ambiguous about which party
will control the day-to-day activities of the employees, the right to control
is “necessarily determined as an inference from such facts and circumstances as
the nature of the general project, the nature of the work to be performed by
the machinery and employees furnished . . . , acts representing an exercise of
actual control.”  Id. at 449–50 (quoting
Producers Chem. Co. v. McKay, 366
S.W.2d 220, 226 (Tex. 1963)).

Here, the contract between American
Rice and Recana does not expressly establish who has the right to control
workers assigned by Recana to American Rice. 
The contract states only, “Recana shall provide [American Rice] with
experienced and qualified employees of Recana (“Personnel”) to perform services
as requested by [American Rice]. . . .”  Thus,
we look to other “traditional indicia” to determine the exercise of control
over the details of the work that caused the injury.  Id.
at 477.  

Deposition testimony by employees
of American Rice and Recana indicates that employees of American Rice
controlled Draper’s day-to-day activities. 
Terry Wiley, the Recana employee responsible for providing and
supervising workers based on American Rice’s daily needs, testified by deposition
that he had no authority to control Draper “in terms of taking Tony off the
line of putting him in a certain place.” 
He testified that he was in his office, located in a different area of
American Rice’s facility “just down the road from [the Domestic Packing
Department],” when Draper was hurt.  He
also testified that, “I would give [Draper] to American Rice and they would
tell him where to go” and that he did not give Draper any directions on the
morning of his heat stroke.

Richard Schneider, the American
Rice supervisor of the area in which Draper was working on the morning of his
injury, testified that American Rice employees would have told Draper where to
go and what tasks were assigned to him. 
He further testified:

[American Rice] controls all
of the details of how the Domestic Packaging Department is run.  All of the orders, directions, and
instructions for doing the work in the Domestic Packaging Department come from
[American Rice].  All employees,
including Recana Temps, are required to follow [American Rice’s] rules,
policies, and procedures regarding working in the packaging department.

 

His affidavit also stated,

With respect to Recana Temps
who work at [American Rice] in the Domestic Packaging Department, [American
Rice] supervisors have the right to direct and control them with respect to the
details of their particular work.  [American Rice] supervisors direct the Recana
Temps where to work and what to do when they come to work in the Domestic
Packaging Department.  [American Rice]
Supervisors assign the Recana Temps to work in specific areas of the Domestic
Packaging Department.

 

Draper argues, however, that the
contract between Recana and American Rice provides that Recana was his sole
employer.  He points out that the
contract required Recana to provide supervision, pay his salary and payroll
taxes, and provide workers’ compensation insurance, and it provided that Recana
“[p]ersonnel shall at all times be and remain employees of Recana, and
Personnel shall under no circumstances be considered employees, agents, or
independent contractors of [American Rice].” 
Draper also directs us to Schneider’s testimony that, based on his
review of the contract between Recana and American Rice, Draper was not an
employee of American Rice and Recana paid his “salary, benefits, taxes, Social
Security, Medicare, and other withholding requirements. . . .”  He also points to Schneider’s testimony that
Recana had “on-site manager coordinators” at American Rice and that Terry Wiley,
a Recana employee, was Draper’s supervisor at Recana.  Draper contends that the contract and the
deposition testimony create a fact issue about who employed him.

Neither the contractual provisions
cited by Draper nor the deposition excerpts he cites address the right of
control of “the progress, details, and methods of operations” of Draper’s labor
for American Rice.  See Flores, 176 S.W.3d at 448–49. 
Instead, the contractual provisions concern duties owed by Recana to its
client, American Rice.  And the
deposition testimony provided by Recana supervisors, including Wiley, indicates
that they did not have the authority to determine how many employees to assign
to the factory on a daily basis, to determine where to assign the employees, or
to put them to work.  Wiley testified
that his office was “down the road” from Draper’s work place and that “American
Rice guys, they supervise[d] Draper]. . . . 
I would give him to American Rice and they would tell him where to
work.”  He further testified that he did
not give Draper any instructions on the morning of his injury; the instructions
would have come from an American Rice supervisor.  Lastly, employees from American Rice, including
Schneider, testified that they directed Recana employees where to work and when
to begin, that Recana employees had to follow the “orders, directions, and
instructions” of American Rice supervisors, and that Recana employees must follow
the “rules, polices, and procedures” established by American Rice for working
in its factory. 

Thus, after indulging every
reasonable inference in favor of Draper, we conclude that American Rice controlled
the means and details of Draper’s labor at American Rice as a matter of law,
and it, as well as Recana, was, therefore, Draper’s employer for purposes of
triggering the exclusive remedy provision of the TWCA.  See
Garza, 161 S.W.3d at 477; Wingfoot
Enters., 111 S.W.3d at 140, 145; Flores,
176 S.W.3d at 446.  Because American Rice
had workers’ compensation insurance coverage and was Draper’s employer under
the TWCA, we hold that the trial court did not err in granting American Rice’s
motion for summary judgment.  

We overrule Draper’s first and
second issues.  

B.   Estoppel

In his third issue, Draper argues
that the trial court erred in granting American Rice’s motion for summary
judgment because American Rice should be equitably estopped from arguing that
Draper is its employee after contracting that it was not.  Having already held that Draper was an
employee of American Rice for the purposes of the TWCA, we conclude that this
issue is moot. American Rice’s position as Draper’s employer for purposes of
the TWCA is not inconsistent with the terms of the contract between Recana and
American Rice.

We overrule Draper’s third issue.

CONCLUSION

We affirm the ruling of the trial
court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Hanks, and Higley.

 











[1]              American Rice had a workers’ compensation insurance
policy issued through the American Home Assurance Company. The policy was
effective from February 1, 2007 until February 1, 2008.  Draper was injured in July 2007.  Draper does not dispute this issue.

 





[2]              Under the Texas Labor Code, “Workers’ Compensation
Insurance Coverage” means “an approved insurance policy to secure the payment
of compensation; coverage to secure the payment of compensation through
self-insurance as provided by this subtitle; or coverage provided by a
governmental entity to secure the payment of compensation.”  Tex.
Lab. Code Ann. § 401.011(44) (Vernon Supp. 2009).